WILLIAM M. CRAMER V. GEORGE H. SHEPPARD, COMPTROLLER OF PUBLIC ACCOUNT.

No. 8047. Decided December 26, 1942.
Rehearing overruled January 20, 1943.
(167 S. W., 2d Series, 147.)

*John Davis, R. J. Thorne, Currie McCutcheon, Adair Rembert, John C. Saner, Will R. Saunders, Alonzo C. Scurlock, J. L. Shook, Wright K. Smith, C. M. Smithdeal, F. E. Spafford, Hatton W. Summers, John N. Touchstone, T. W. Wassell, Jeff W. Hassell, M. N. Chrestman, J. L. Lipscomb, John White, Guy Carter, F. M. Ryburn, Neal De Shazo, Paul Carrington, W. B. Hamilton, Lewis Lefkowitz, S. P. Sadler, J. Cleo Thompson, Carlton Winn, H. W. Strasburger, W. O. Reed, Henry Tiery* and *George P. Gardere,* all of Dallas, for relator.

The duly elected and qualified district judge of the 95th District Court of Dallas County, Texas, by accepting a temporary appointment as Major in the Army of the United States for the duration of the war, unless sooner terminated, did not vacate the civil office which he held, and his successor, elected by the practicing lawyers of the bar of Dallas County, as special judge, during the absence of the regular judge, was properly elected and entitled to the salary provided for such office. State ex rel McGaughey v. Grayston, 163 S. W. (2d) 335; Glover v. Albrecht, 173 S. W. 504; Labadie V. Dean, 47 Texas 100.

*Gerald C. Mann,* Attorney General, *Geo. W. Barcus, R. W. Fairchild,* and *Ocie Speer,* Assistants Attorney General, for respondent.

Unless it can be said that the amendment to Section 40 of Article 16 of the Constitution covers the federal office held by Judge Dixon, he vacated his office as district judge by reason of section 12 of Article 16, of the Constitution, when he became an officer in the United States Army. State v. Degress, 53 Texas 387; Robert v. Yarboro, 41 Texas 449; State ex rel Cornwell v. Allen, 21 Ind. 516, 83 Am. Dec. 367; Pruitt v. Glenn Rose Ind. Sch. Dist., 126 Texas 45, 84 S. W. (2d) 1004, 100 A. L. R. 1158.

*W. F. Bane,* and *Olin E. Nesmith, both* of Dallas, for intervenor, Judge Dick Dixon.

*Beauford H. Jester* and *Dan Moody,* both of Austin, and *Ernest May,* of Fort Worth, filed briefs as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

Relator filed an original petition for writ of mandamus to compel the respondent to issue him a warrant for compensation alleged to be due him as Special Judge of the 95th Judicial District Court for Dallas County, to which position he had been duly elected by the practicing lawyers of Dallas County, in the absence of the regular judge, who had failed to hold court, as authorized by Article 1887, R. C. S. 1925. Judge Dick Dixon, the regular judge, accepted a temporary appointment as Major in the Army of the United States, took the oath of office on August 13, 1942, and wrote a letter to the respondent, advising him of the appointment, and requested him to discontinue his pay as judge of the 95th District Court, until he terminated his duties in the Army of the United States and resumed his duties as judge of said district court.

The question to be decided is whether Judge Dixon, the duly elected and qualified judge of the 95th District Court of Dallas County, vacated the office of district judge by accepting appointment and qualifying as a Major in the Army of the United States. This question is to be determined from a construction of Sections 33 and 40 of Article 16 of the Constitution of Texas.

Judge Dixon intervened and filed a brief, in which he states that his appointment was made "under the terms and provisions of Chapter 414, First Session of the 77th Congress"; and that upon taking the oath of office as Major he became an officer of the Officers' Reserve Corps within the meaning of Sections 33 and 40, Article 16, of the Texas Constitution, and

entitled to hold the office as judge of the 95th Judicial District Court while serving as an officer in the Army of the United States.

It is contended by respondent that Judge Dixon vacated his office as a district judge by qualifying as a Major in the Army of the United States, because of Section 12 of Article 16 of the Constitution, which reads as follows:

"No member of Congress, nor person holding or exercising any office of profit or trust, under the United States, or either of them, or under any foreign power, shall be eligible as a member of the Legislature, or hold or exercise any office of profit or trust under this State."

Before discussing Sections 33 and 40 of Article 16 of the Constitution, and in order to better understand the language used therein, and the purposes for which they were submitted to the people for approval or disapproval, we call attention to the federal statutes in effect at that time relating to the federal statutes in effect at that time relating to the federal armed forces, and under which Judge Dixon received his appointment as Major in the Army of the United States.

Section 1, Title 10, U. S. C. A., defines the National Forces as follows:

"All able-bodied male citizens of the United States and persons of foreign birth who shall have declared their intention to become citizens of the United States under and in pursuance of the laws thereof, between the ages of eighteen and forty-five years, are hereby declared to constitute the national forces, and, with such exceptions and under such conditions as may be prescribed by law, shall be liable to perform military duty in the service of the United States." (Apr. 22, 1898, c. 187, sec. 1, 30 Stat. 361.)

The law defines the military armies of the United States as follows:

The Army of the United States is defined in Section 2, Title 10, U. S. C. A., which reads:

"Sec. 2. Composition of Army of United States. The Army of the United States shall consist of the Regular Army, the National Guard while in the service of the United States, and

the Organized Reserves, including the Officers' Reserve Corps and the Enlisted Reserve Corps." (June 4, 1920, c. 227, sub-chapter 1, sec. 1, 41 Stat. 759.)

In 1941 this section was amended to read as follows:

"Sec. 2. Composition of Army of United States. The Army of the United States shall consist of the Regular Army, the National Guard of the United States, the National Guard while in the service of the United States, the Officers' Reserve Corps, the Organized Reserves, and the Enlisted Reserve Corps, and shall include persons inducted into the land forces of the United States under sections 301-318 of Appendix to Title 50." (As amended Dec. 13, 1941, c. 571, sec. 3, 55 Stat. 800.)

The Regular Army is defined as follows:

"Sec. 3. The Regular Army is the permanent military estab-lishment which is maintained both in peace and war accord-ing to law." (Apr. 22, 1898, c. 187, sec. 3, 30 Stat. 361.)

Section 4, Title 10, U. S. C. A., describes the composition of the Regular Army. The length of service and benefits derived under the law for those serving in that branch of the Army are defined in Sections 943, 943a, 945, 971b, and other sections of Titles 10, U. S. C. A.

Section 351, Title 10, U. S. C. A., provides for the organi-zation of the Officers' Reserve Corps, and reads:

"For the purpose of providing a reserve of officers available for military service when needed there shall be organized an Officers' Reserve Corps consisting of general officers and officers assigned to sections corresponding to the various branches of the Regular Army and such additional sections as the President may direct. The grades in each section and the number in each grade shall be as the President may prescribe." (As amended June 15, 1933, c. 87, sec. 3, 48 Stat. 154.)

Sections 355 and 355a, Title 10, U. S. C. A., provide that all persons appointed officers in the National Guard of the United States and in the Officers' Reserve Corps are "reserve officers and shall be commissioned in the Army of the United States."

Section 358, Title 10, U. S. C. A., provides: "Any officer of the Officers' Reserve Corps may be discharged at any time in the discretion of the President." His commission further provides that it is for the duration of the present emergency and six months thereafter, unless sooner terminated.

Section 361, Title 10, U. S. C. A., reads:

"A reserve officer shall not be entitled to pay and allowance except when on active duty. When on active duty he shall receive the same pay and allowances as an officer of the Regular Army of the same grade and length of active service, and mileage from his home to his first station and from his last station to his home." (June 3, 1916, c. 134, sec. 37a, as added June 4, 1920, c. 227, Subch. I, sec. 32, 41 Stat. 776.)

Section 513, Title 10, as it existed upon the dates of the adoption of the present amendments of Sections 33 and 40 of Article 16 of our Constitution was as follows:

"In time of war any officer of the regular Army may be appointed to higher temporary rank without vacating his permanent commission, such appointments in grades below that of Brigadier General being made by the President alone, but all other appointments of officers in time of war shall be in the Officers Reserve Corps." (This section has been amended since the adoption of the amendments to our Constitution hereinafter quoted.)

Chapter 414, First Session, 77th Congress, Public Law 252, 55 Stat. 728, H. J. Res. 199, adopted by Congress on September 22, 1941, which authorized Judge Dixon's appointment, omitting the heading, it is as follows:

"During the present emergency, temporary appointment as officers in the Army of the United States, may be made, under such regulations as the President may prescribe, from among qualified persons without appointing such persons as officers in any particular component of the Army of the United States.

"All persons so appointed as officers shall be commissioner in the Army of the United States and may be ordered into the active military service of the United States to serve therein for such periods of time as the President may prescribe. Such appointments in grades below that of Brigadier general shall be made by the President alone, and general officers by and

with the advice and consent of the Senate: PROVIDED, *that any appointment made under the provisions of this act may be vacated at any time by the President and, if not sooner vacated, shall continue during the present emergency and six months thereafter;* PROVIDED FURTHER, that any person appointed as an officer in the Army of the United States under the provisions of this Act shall receive the same pay and allowances and be entitled to the same rights, privileges and benefits as members of the Officers' Reserve Corps of the same grade and length of active service, AND PROVIDED FURTHER, that nothing contained in this Act shall be construed to prohibit the appointment of officers in the various components of the Army of the United States in accordance with existing laws." (Italics ours.)

Judge Dixon was informed of his appointment by a letter from the Adjudant General of the United States, which in part reads as follows:

"1. By direction of the President you are temporarily appointed and commissioned in the Army of the United States, effective this date, in the grade and section shown in address above. (Temporary Appointment, Major AUS). Your serial number is shown after A above.

"2. This commission will continue in force during the pleasure of the President of the United States for the time being, and for the duration of the present emergency and six months thereafter unless sooner terminated.

"3. There is inclosed herewith a form for oath of office which you are requested to execute and return promptly to the agency from which it was received by you. The execution and return of the required oath of office constitute an acceptance of your appointment. No other evidence of acceptance is required." (The initials AUS mean Army of the United States.)

It is the contention of Judge Dixon that, if his appointment does not come within the definition of Officers' Reserve Corps of the United States, as defined by the Acts of Congress in 1926 and 1932, nevertheless it is clear that the amendment to our Constitution intended to include all officers who were in the Officers' Reserve Corps of the United States when war was declared, as well as all those commissioned thereafter to serve during the emergency, excepting only those in the Regular Army; and it is immaterial whether his appointment was

made under Chapter 414, First Session, 77th Congress, or under Chapter 20, Title 10, U. S. C. A.

We will now consider Sections 33 and 40·of Article 16 of the Constitution of this State. Prior to 1926, Section 40 read as follows:

"No person shall hold or exercise, at the same time, more than one civil office of employment, except that of justice of the peace, county commissioner, notary public and postmaster, unless otherwise specially provided herein."

The Court of Criminal Appeals, in 1918, in the case of Lowe v. State, 83 Texas Crim. Rep. 134, 201 S. W. 986, held that a district judge who was an officer of the National Guard of Texas and went on the payroll of the Federal Government as an officer in the military service, thereby vacated his office as judge. Thereafter, in 1922, the Court of Criminal Appeals, in the case of Ex parte Dailey, 93 Texas Crim. Rep. 68, 246 S. W. 91, 26 A. L. R. 138, held that a district judge who accepted the position and qualified as a Captain in the National Guard of Texas, but had not thereafter been called into active military service, had not vacated his office as judge. It was intimated in that opinion that the decision would have been otherwise had the officer been called into active federal military service. These decisions left a doubt whether a member in any of the several military organizations above mentioned could also hold an office or employment with the State Government; and, if so, whether one lost his office or employment when called into active service because of an emergency that would last for an indefinite period.

While this situation existed, the 39th Legislature, on March 16, 1925, adopted S. J. R. No. 7, proposing an amendment to the Constitution by amending Sections 33 and 40 of Article 16, to permit officers and enlisted men of the National Guard, the National·Guard Reserve, the Organized Reserves of the. United State, and the Officers' Reserve Corps of the United States, to hold public office or employment in Texas. These amendments were adopted by the electorate on November 2, 1926. They were again readopted in November, 1932, for the purpose of extending their benefits to retired officers and men of the United States Army, Navy, and Marine Corps, and to permit them to vote.

Section 33 of Article 16 of the Constitution reads:

"The Accounting Officers of this State shall neither draw nor pay a warrant upon the Treasury in favor of any person, for salary or compensation as agent, officer or appointee, who holds at the same time any other office or position of honor, trust or profit, under this State or the United States, except as prescribed in this Constitution. Provided, that this restriction as to the drawing and paying of warrants upon the Treasury shall not apply to officers of the National Guard of Texas, the National Guard Reserve, the *Officers' Reserve Corps of the United States,* nor to enlisted men of the National Guard, the National Guard Reserve, and the Organized Reserves of the United States, nor to retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers and retired enlisted men of the United States Army, Navy, and Marine Corps." (Italics ours.)

Section 40 of Article 16 of the Constitution reads:

"No person shall hold or exercise, at the same time, more than one Civil Office of emolument, except that of Justice of Peace, County Commissioner, Notary Public and Postmaster, Officer of the National Guard, the National Guard Reserve, and the *Officers' Reserve Corps of the United States* and enlisted men of the National Guard, the National Guard Reserve, and the Organized Reserves of the United States, and retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers, and retired enlisted men of the United States Army, Navy, and Marine Corps, unless otherwise specially provided herein. Provided, that nothing in this Constitution shall be construed to prohibit an officer or enlisted man of the National Guard, and the National Guard Reserve, or an officer in the Officers' Reserve Corps of the United States, or an enlisted man in the Organized Reserves of the United States; or retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers, and retired enlisted men of the United States Army, Navy and Marine Corps, from holding in conjunction with such office any other office or position of honor, trust or profit, under this State or the United States, or from voting at any Election; General, Special or primary, in this State when otherwise qualified." (Italics ours.)

The case of Carpenter v. Sheppard, Comptroller, 135 Texas 413, 145 S. W. (2d) 562, (writ of certiorari denied), 312 U. S.

697, 85 L. Ed. 1132, 61 Sup. Ct. 734, involved the construction of Section 12 of Article 16, and Sections 33 and 40 of Article 16, of the Constitution. Carpenter was a Major in the National Guard of Texas, and at the same time was a member and Executive Director of the Texas Unemployment Compensation Commission. He was called into active military service by order of the President of the United States. It was contended that Carpenter thereby vacated his office as a member of the Texas Unemployment Compensation Commission, because of Section 12 of Article 16, above quoted. We quote as follows from that opinion: ·

"By virtue of Sections 33 and 40 of Article 16 of the Constitution, we hold that Relator did not vacate his office as a member and Chairman and Executive Director of the Texas Unemployment Compensation Commission, when called into the military service of the United States and appointed an officer therein. We further hold that his appointment as Major in the United States Army does not violate Section 12 of Article 16 of the Constittuion."

This holding was mandatory because of the express language contained in the amendment to Section 40 of Article 16 of the Constitution. On account of its importance we requote that language here:

*"Provided, that nothing in this Constitution shall be construed to prohibit * * * an officer in the Officers' Reserve Corps of the United States, * * from holding in conjunction with such office any other office or position of honor, trust or profit, under his State or the United States, * *."* Italics ours.)

Any other construction would render the amendments to Sections 33 and 40 meaningless, and would mean that their adoption by the people was an idle gesture. Then, too, if it be contended that the amendments to Sections 33 and 40 are in conflict with Section 12 of Article 16, it must be noted that such amended sections, Nos. 33 and 40, are the latest expression of the will of the people, and any provisions of the Constitution previously existing must, in case of conflict, yield to them. State v. Brownson, 94 Texas 436, 61 S. W. 114; Gillespie v. Lightfoot, 103 Texas 359, 127 S. W. 799.

Whether or not there is a vacancy in the office of District Judge for the 94th District Court depends on whether or not

Judge Dixon holds an office in the Officers' Reserve Corps of the United States, as described in the State Constitution. Members of the Officers' Reserve Corps of the United States are expressly excepted by the provisions contained in Sections 33 and 40 of Article 16 from the restrictions and prohibitions with respect to the dual office holding described in those sections. We are therefore confronted with the query—What, then, is the "Officers' Reserve Corps of the United States" within the meaning of these constitutional provisions?

In construing Sections 33 and 40, the language used therein must be presumed to have been carefully selected, and the words used are to be interpreted as the people generally understood them. Markowsky et al v. Newman et al, 134 Texas 440, 136 S. W. (2d) 808. It will be noted that both in Section 33 and in Section 40, members of the Officers' Reserve Corps of the United States are relieved from the provisions of the Constitution which prevent a person from holding two offices. The federal statutes quoted above clearly define the meaning of "Officers' Reserve Corps of the United States." That term must be understood as defined by the federal statutes existing at the time Sections 33 and 40 were adopted. At that time the "Officers' Reserve Corps," as expressed in Section 351, included all officers assigned to "sections corresponding to the various branches of the Regular Army, and such additional sections as the President may direct * *," and, as expressed in Section 513, "in time of war any officer of the Regular Army may be appointed to a higher temporary rank without vacating his permanent commission, such appointment in grades below that of Brigadier general being made by the President alone, *but all other appointments of officers in time of war shall be in the Officers' Reserve Corps.*" (Italics ours.) As stated above, Section 513 has been amended since Sections 33 and 40 were adopted. It is seen, therefore, that all officers in the Army of the United States appointed in time of war, except Regular Army Officers, were appointed in the Officers' Reserve Corps. When the words of the amendments were chosen, it was intended to include all classes named—that is, "National Guard, the National Guard Reserve, and the Officers' Reserve Corps of the United States * * *," as those terms were understood at that time. It clearly appears that the people, by adopting these amendments, intended to relieve the classes named therein from the inhibitions contained in the then existing Constitution, and as construed by the decisions of our Court above cited.

Any other holding would destroy the very object sought to be obtained by the adoption of the amendments.

Judge Dixon was under 45 years of age on August 14, 1942. He is not in the Regular Army for the following reasons: (1) Regular Army commissions are in the permanent organization as defined in Section 3 above, and are for a definite period of time or for life. (2) Section 513 provides, "that an appointment other than that of a member of the Regular Army made in time of war shall continue until six months after its termination." He was not a member of the National Guard because he was not in any military organization before accepting the appointment as a Major in the Army of the United States. He was not inducted under the Selective Training and Service Act of 1940. He is a commissioned officer, and could not be a member of the Enlisted Reserve Corps.

Section 355a, Title 10, U. S. C. A., provides:

"All persons appointed in the Officers' Reserve Corps are reserve officers and shall be commissioned in the Army of the United States." (June 3, 1916, c. 134, sec. 37, as added June 15, 1933, c. 87, sec. 3, 48 Stat. 155.)

The appointment of Judge Dixon reads in part: "By direction of the President you are temporarily appointed and commissioned in the Army of the United States." It is quite clear that Judge Dixon was not commissioned in the permanent military establishment, but his commission was to "continue in force during the pleasure of the President of the United States for the time being and for the duration of the present emergency, and six months thereafter, unless sooner terminated."

When Judge Dixon was commissioned in the Army of the United States he was commissioned either as an officer in the Officers' Reserve Corps of the United States or as a National Guard officer. There is nothing in this record to show that he was commissioned in the National Guard as a National Guard officer. However, that is immaterial, for the reason that by Sections 355 and 355a, Title 10. U. S. C. A., it is provided that all persons appointed officers in the National Guard of the United States and all persons appointed in the Officers' Reserve Corps of the United States are reserve officers, and "shall be commissioned in the Army of the United States." When his commission is construed in the light of the law relating to his

appointment, and the composition of the Army of the United States, we think that it conclusively appears that he was commissioned as an officer in the Officers' Reserve Corps of the United States.

The respondent contends that Sections 33 and 40 do not permit officers of the State to hold offices in the armed forces of the United States in time of war and to continue to hold their civil offices. Prior to the adoption of Sections 33 and 40 it was held that a person could not accept a position in the Army and at the same time hold a civil office. State v. DeGress, 53 Texas 387; Lowe v. State, 83 Texas Cr. R. 134, 201 S. W. 986; Ex parte Dailey, 93 Texas Cr. R. 68, 246 S. W. 91, 26 A. L. R. 138.

In some States, whose constitutions do not contain provisions similar to Sections 33 and 40, it has been held that a person accepting a commission in the Army of the United States does not vacate his civil office. See McCoy v. Board of Supervisors, 18 Cal. (2d) 193, 114 Pac. (2d) 569; State ex rel. McGaughey v. Grayston, Mo. Sup. 163 S. W. (2d) 335; Kennedy v. Cook, 285 Ky. 9, 146 S. W. (2d) 56, 132 A. L. R. 251; In re Advisory Opinion to Governor (Fla.), 8 So. (2d) 26, 140 A. L. R. 1481; Id. (Fla.), 9 So. (2d) 172, 140 A. L. R. 1492. It has been held otherwise in some States. See Fekete v. City of East St. Louis, 315 Ill. 58, 145 N. E. 692, 40 A. L. R. 650; Commonwealth v. Smith, 343 Pa. 446, 23 Atl. (2d) 440; Perkins v. Manning (Ariz.), 122 P. (2d) 857. But we have not found any case where, in construing the provisions of a constitution similar to those contained in Sections 33 and 40, it has been held that a person accepting a commission in the Army of the United States vacated his civil office.

Texas has taken a positive position on this question. Sections 33 and 40 were adopted as amendments to the Constitution, expressing the will of the people of this State. When these sections were adopted in 1932, those who were permitted to hold two positions of honor, trust, or profit were named specifically; and the Officers' Reserve Corps of the United States is expressly named in the amendments. The objects of the amendments are expressed in plain, definite language. By the adoption of the foregoing amendments to the Constitution the people of this State clearly expressed their will on this question, and those who are called upon to construe the Constitution are

not authorized to thwart the will of the people by reading into the Constitution language not contained therein, or by construing it differently from its plain meaning. The people have the sole power to change or modify the plain language adopted by them. Until that is done, it remains the supreme law of the land, and should be obeyed.

We think the people, by the adoption of the amendments, intended to avoid the inhibitions contained in the then existing Constitution with respect to dual office holding. This conclusion is inescapable, in our judgment, when we consider the reasons for submitting Sections 33 and 40 to the people for their approval. In selecting the classes to be favored by the amendments, the National Guard, the National Guard Reserve, and the Officers' Reserve Corps of the United States, among others, were included. The inclusion of these classes encouraged the citizens of this State to render a patriotic service to the State and the Nation, by qualifying themselves for military service in the various units of the Army and National Guard of the State. The services to be rendered were generally in short training periods each year. In case of emergency, either local, national, or international in scope, the services would extend throughout the emergency. Thus it appears that, by the adoption of these amendments, the people considered it to be in the interest of the public to favor the classes named, by allowing them at the same time to hold civil offices under the State. The people no doubt considered, when they adopted these amendments, that the public's welfare would be better served by allowing these classes to serve the State and the Nation in the military units named, while at the same time rendering service to the State as civil officers.

Nor can it logically be contended that Sections 33 and 40 of Article 16 were intended to apply only in "peacetime." There is no language contained in such amendments which could be construed to limit their application to "wartime" or to "peacetime." If the people had intended the amendments to have such limitation, it would have been easy to express such intention thereon. But to give these amendments such meaning, we would have to write into the Constitution language not contained therein.

It is also contended that to permit Judge Dixon to hold two officers in time of war would lead to "absurd consequences,"

the "sacrifice of great public interests," "grave public inconvenience," and "unjust discrimination." The facts of this case do not support such contentions. It may be that some inconvenience will result to the public by reason of these amendments, particularly if this war is of long duration; but the history of all wars is that they bring on sacrifices and inconvenience.

■■ The rule has long prevailed in this State that constitutional provisions should not be given a technical construction which would defeat their pupose. The meaning of a constitutional provision is fixed when it is adopted, and it is not different at any subsequent time. It should be construed in the light of the conditions existing at the time of adoption. Cox v. Robison, 105 Texas 426, 150 S. W. 1149; Mumme v. Marrs, 120 Texas 383, 40 S. W. (2d) 31; Marrs v. Mumme, Tex. Civ. App., 25 S. W. (2d) 215; Travelers' Ins. Co. v. Marshall, 124 Texas 45, 76 S. W. (2d) 1007, 96 A. L. R. 802. We cannot question the wisdom of a constitutional provision. City of Tyler v. Texas Employers' Ins. Assn., Tex. Com. App., 294 S. W. 195; Lewis v. Independent School District of City of Austin, 139 Texas 83, 161 S. W. (2d) 450. If the meaning of the language of a constitutional provision is plain, the courts must give full effect thereto, without regard to consequences. Koy v. Schneider, 110 Texas 369, 218 S. W. 479, 221 S. W. 880.

The public's business will not suffer on account of Judge Dixon's holding a commission in the Army of the United States. The Legislature has provided for the election of his successor, in the event he should be absent or unable to perform his duties as district judge. Article 1887, Vernon's Annotated Civil Statutes. See also Section 23 of Article 2092, Vernon's Annotated Civil Statutes. Judge Dixon did not announce his resignation as district judge at the time he entered the Army, nor did he publicly renounce his claim to the office; but he did specifically waive the compensation allowed a district judge by law while serving in the armed forces. The relator, Judge Cramer, was duly elected under the statute, and transacted the business coming before the 95th District Court of Dallas County, thereby relieving the public from any inconvenience by the absence of Judge Dixon from his court.

The Legislature has also provided, by the enactment of Article 5890a, Vernon's Annotated Civil Statutes, how compen-

sation shall be paid to certain persons who are absent and unable to perform civil duties on account of performing military duties. See Spears v. Sheppard, Comptroller, 136 Texas 277, 150 S. W. (2d) 769.

The Legislature has enacted various statutes, to meet various conditions, in the event a person holding an office is unable to perform his duties. In the event the Attorney General should be ill for a year, and for that reason incapable of performing his duties of office, by Article 4412, Vernon's Annotated Civil Statutes, the Legislature has provided for a First Assistant Attorney General. And the following Article provide for somewhat analagous contingencies in the following offices: Article 4340 relates to the Secretary of State; Article 4352 relates to the Comptroller of Public Accounts; Article 4376 relates to the State Treasurer; and Article 5255 relates to the General Land Office Commissioner.

No human document has ever been written or can be written that will meet every conceivable contingency. It is easy to conceive many contingencies that will never arise. It is beside the point to argue that the construction we have given Sections 33 and 40 of Article 16 of our Constitution should not be indulged in, because under certain remote contingencies which may arise some departments of government may for a time be rendered unable to function. For example, should more than one vacancy exist in this Court, or any other court of this State composed of three members, such court would be unable to function until the Governor should appoint members to fill such vacancies. Furthermore, should such vacancies occur while the Legislature is in session, the court affected could not function until the Governor should appoint and the Senate confirm.

To our minds, it is illogical to contend that the construction we have given these constitutional provisions would make it impossible for a county commissioners' court to fix tax rates, if a member thereof should be absent for the same reason Judge Dixon was absent, because Article 7045 of our Civil Statutes requires all members of such courts to be present when county tax rates are fixed. Certainly a statute cannot override the Constitution. Where the Constitution permits a member to be absent, a statute cannot require him to be present. It follows that in such instance Article 7045, supra, cannot be applied as to the member absent by constitutional authority.

We are not unmindful of the rule that, in construing or interpreting constitutional and statutory provisions which define a general rule, and then provide exceptions thereto, one claiming under the exception must clearly bring himself thereunder. To our minds this rule has been met in this instance. Judge Dixon clearly comes under the exception contained in Section 40 of Article 16 of our Constitution.

We also are not unmindful of the rule that constitutional and statutory provisions will not be so construed or interpreted as to lead to absurd conclusions, great public inconvenience, or unjust discrimination, if any other construction or interpretation can reasonably be indulged in; but this rule only applies where the constitutional or statutory provision under consideration is open to more than one construction or interpretation. Such is not the case here. Should we admit, however, that this constitutional provision is open to more than one construction, we do not think we have given it an absurd construction, or one that will lead to great public inconvenience or produce unjust discrimination. This Republic is engaged in the greatest war of all times. It is a struggle for our very existence. If we lose it our very form of government may crumble and our judicial system be destroyed. The interpretation or construction we have indulged in results in giving to our armed forces the services of men it otherwise might be more difficult to obtain; and, furthermore, it permits such men to offer their services under such circumstances that they can resume the duties of their civil offices when the war is over, if they are then living, and their term of officer unexpired. We submit that such a construction is not an absurdity, and leads to, rather than away from, the best interest of this Republic and of this State.

Finally, to our mind, to give these constitutional provisions the construction that they apply only in time of peace, and do not apply in time of war, would be for this Court to write therein a provision that they do not contain. Furthermore, such a construction would lead to an absurdity and to great public inconvenience, rather than away therefrom, for the reason that such a construction would convict our Legislature in proposing, and our people in adopting these constitutional provisions, of an intent to aid our country in time of peace, when it needs such aid least, but to deny the same in time of war, when it needs it most.

Texas is now, and has always been, proud of her military history. She gladly complies with all requirements necessary to carry on a war. Her record in this war brings a glow of pride to all patriotic people. Certainly the patriotism and loyalty of our people cannot be questioned. Furthermore, we may safely assume that a person who holds a civil office, and who is patriotic enough to temporarily leave such office and serve his country in time of war, will be patriotic enough to surrended such civil office if his absence therefrom stops the functioning of such office.

■ It clearly appears that Judge Dixon was not appointed a member of the Regular Army. It logically follows that he was commissioned a reserve officer in the Army of the United States, and hence is in the Officers' Reserve Corps of the United States. By virtue of Sections 33 and 40, supra, he did not vacate his office of district judge when he accepted the commission as above indicated.

We hold that Judge Cramer was legally elected as Special District Judge, and that he is entitled to the salary provided by law.

The writ of mandamus will issue as prayed for.

Opinion delivered December 26, 1942.

MR. CHIEF JUSTICE ALEXANDER, dissenting.

I am unable to agree with the majority opinion.

It is conceded by petitioner that he could not be lawfully elected by the practicing lawyers of Dallas County under the provisions of Revised Statutes Article 1887, as special judge, to fill the place of Judge Dixon, the regular district judge, if Judge Dixon had abandoned or forfeited the office as such regular judge. This brings us to a consideration of the question as to whether Judge Dixon had abandoned or forfeited the office.

In the outset, it must be remembered that our Constitution, Article 16, Section 40, as amended in 1932, prohibits the holding at the same time of more than one civil office of emolument, with certain exceptions therein enumerated. Since the general provision of this section of the Constitution condemns the hold-

ing or more than one office at the same time, the exception which permits such practices, being contrary to the general rule, must be strictly construed. 59 C. J. 1089-1092. The petitioner must bring his case within one of the exceptions—otherwise his petition must be denied.

The Constitution contains exceptions in favor of three general classes, as follows: (1) National Guard, including officers and enlisted men thereof and National Guard Reserve; (2) Organized Reserves, including the Officers' Reserve Corps and Enlisted Reserve Corps; and (3) certain retired officers. It is not contended that Judge Dixon is an officer or enlisted man in the National Guard, or that he is in the National Guard Reserve, or that he is a retired officer. Petitioner's sole contention is that Judge Dixon is exempted from the inhibition of the Constitution solely because he is an officer in the Officers' Reserve Corps. If the exemption allowed by the Constitution is to be applied, it must be shown that Judge Dixon is a member of that particular organization.

We look to the statutes of the United States creating the Officers' Reserve Corps, as they existed at the time of the amendment of our Constitution in 1932, to ascertain what was meant by the people when they adopted the amendment exempting members of the Officers' Reserve Corps. At that time Section 2, Title 10, U. S. C. A., defined the Army of the United States as follows:

"Sec. 2. Composition of Army of United States. The Army of the United States shall consist of the Regular Army, the National Guard while in the service of the United States, and the Organized Reserves, including the Officers' Reserve Corps and the Enlisted Reserve Corps." (June 4, 1920, c. 227, subchapter I, Sec. 1, 41 Stat. 759.)

It will be noted that this statute divides the Army into three classes, as follows: (1) Regular Army; (2) National Guard; and (3) Organized Reserves, including the Officers' Reserve Corps and the Enlisted Reserve Corps.

As before stated, Judge Dixon, in order to be entitled to the benefit of the exception, must bring himself within the exception. It is not sufficient to show that he is not a member of the Regular Army as it existed in 1932; he must bring him-

self within the exception and show that he is a member of the Officers' Reserve Corps. The Officers' Reserve Corps was defined as follows:

"For the purpose of providing a reserve of officers available for military service when needed there shall be organized an Officers' Reserve Corps consisting of general officers and officers assigned to sections corresponding to the various branches of the Regular Army and such additional sections as the President may direct. The grades in each section and the number in each grade shall be as the President may prescribe." (As amended June 15, 1933, c. 87, Sec. 3, 48 Stat. 154.) Section 351, Title 10, U. S. C. A.

The pay of members of the Officers' Reserve Corps was fixed as follows:

"A reserve officer shall not be entitled to pay and allowances except when on active duty. When on active duty he shall receive the same pay and allowances as an officer of the Regular Army of the same grade and length of active service, and mileage from his home to his first station and from his last station to his home." (June 3, 1916, c. 134, sec. 37a, as added June 4, 1920, c. 227, Subch. I, sec. 32, 41 Stat. 776.) Section 361, Title 10, U. S. C. A.

Judge Dixon's appointment was evidenced by letter. The essential part of the letter is as follows:

"1. By direction of the President you are temporarily appointed and commissioned in the Army of the United States, effective this date, in the grade and section shown in address above. (Temporary Appointment, Major AUS). Your serial number is shown after A above.

"2. This commission will continue in force during the pleasure of the President of the United States for the time being, and for the duration of the present emergency and six months thereafter unless sooner terminated.

"3. There is inclosed herewith a form for oath of office which you are requested to execute and return promptly to the agency from which it was received by you. The execution and return of the required oath of office constitute an acceptance of your appointment. No other evidence of acceptance is required." (The initials AUS mean Army of the United States.)

There is not a word in the above letter to indicate that Judge Dixon was appointed as a member of the Officers' Reserve Corps. The Officers' Reserve Corps is not mentioned in the letter, and it is difficult to see how it is claimed that by virtue of such appointment he became a member of the Officers' Reserve Corps. It is equally as reasonable to say that he thereby became a member of the Regular Army or of the National Guard.

As a matter of fact, long after the adoption of the amendment to our Constitution, Congress, in 1941, adopted an Act creating a new class, which I will call the 4th class in the Army of the United States. That Act was as follows:

"During the present emergency, temporary appointments as officers in the Army of the United States, may be made, under such regulations as the President may precribe, from among qualified persons without appointing such persons as officers in any particular component of the Army of the United States.

"All persons so appointed as officers shall be commissioned in the Army of the United States and may be ordered into the active military service of the United States to serve therein for such periods of time as the President may prescribe. Such appointments in grades below that of Brigadier General shall be made by the President alone, and general officers by and with the advice and consent of the Senate: PROVIDED, that any appointment made under the provisions of this act may be vacated at any time by the President and, if not sooner vacated, shall continue during the present emergency and six months thereafter; PROVIDED FURTHER, that *any person appointed* as an officer in the Army of the United States *under the provisions of this Act shall receive the same pay and allowances and be entitled to the same rights, privileges and benefits as members of the Officers Reserve Corps* of the same grade and length of active service, AND PROVIDED FURTHER, that nothing contained in this Act shall be construed to prohibit the appointment of officers in the various components of the Army of the United States in accordance with existing laws." (Italics mine.) Chap. 414, 1st Sess. 77th Congress, Public Law 252, 55 Stat. 728, H. J. Res. 199, adopted by Congress on September 22, 1941.

Very clearly Judge Dixon was appointed under the above Act, but there is nothing in that Act to indicate that those appointed thereunder should be members of the Officers' Reserve

Corps; in fact, the contrary is shown by the very wording of the Act itself. It provides that those appointed thereunder *shall receive the same pay as members of the Officers' Reserve Corps.* If Congress had intended that those so appointed should be members of the Officers' Reserve Corps, it would have been foolish for it to make the provision that it did concerning their pay. It would have been equivalent to saying that "members of the Officers' Reserve Corps shall receive the same pay as members of the Officers' Reserve Corps." The fact that Congress saw fit to provide that those so appointed under that Act should receive the same pay as members of the Officers' Reserve Corps indicates clearly that Congress recognized that such appointees belonged to a different class, and that the pay and other privileges of members of the Officers' Reserve Corps should be used as a standard for fixing the compensation of those belonging to the new classification.

At the time our Constitution was amended in 1932 Section 513, Title 10, U. S. C. A., provided as follows:

"In time of war any officer of the regular Army may be appointed to higher temporary rank without vacating his permanent commission, such appointments in grades below that of Brigadier General being made by the President alone, but all other appointments of officers in time of war shall be in the Officers Reserve Corps."

The majority opinion stresses the fact that the above statute, at the time in question, provided that "all other appointments of officers in time of war shall be in the Officers Reserve Corps." It is true that the law so provided, and if at that time any appointment had been made other than in the Regular Army, the President would have been required to make the appointment in the Officers' Reserve Corps; and if any one had been so appointed in the Officers' Reserve Corps, he would have been entitled to the benefit of the exemption here under consideration. But the fallacy in that line of reasoning lies in the fact that the appointment of Judge Dixon was not made under that statute. There was nothing to prevent Congress from amending that statute and providing for appointment of officers in the Army, other than in the Officers' Reserve Corps. Congress actually did that very thing. It amended that section of the statute in 1940, and eliminated the provision which required all such temporary appointments to be made in the Officers' Reserve Corps. In addition, Congress adopted Chapter 414,

First Session 77th Congress, Public Law 252, above copied, and provided for the temporary appointment of officers in the Army of the United States during the present emergency. The majority opinion concedes that Judge Dixon's appointment was made under this new Act, and not under the old statute. The new Act contains no provision requiring such appointment to be made in the Officers' Reserve Corps, and there is nothing in the Act which says that those so appointed shall be members of the Officers' Reserve Corps.

The majority opinion proceeds on the theory that our Constitution exempts all those in the armed forces of the United States except members of the Regular Army, and since the appointment of Judge Dixon was temporary, and did not specify that he had been appointed in the Regular Army, it necessarily follows that he has been appointed in the Officers' Reserve Corps. The Constitution, however, does not exempt all except those in the Regular Army. It exempts only certain classes, and Judge Dixon does not bring himself within one of those classes.

Since Judge Dixon is not a member of the Officers' Reserve Corps, and therefore not entitled to be exempted as such, it becomes unnecessary to here discuss the Comptroller's contention, that even if he were a member of the Officers' Reserve Corps, the exemption would not apply to him while he is on active duty in time of war.

The seriousness of the situation that will result if the exemption contained in the Constitution is liberally construed, in keeping with the majority opinion, so as to exempt all those in the armed forces, other than those in the Regular Army, is readily apparent. For example, Revised Statutes Article 7045 requires the presence of the county judge and all commissioners in order to fix the tax rate for a county. If a county judge or a commissioner of any county should leave his office and join the armed forces without resigning his position, no taxes could be levied in that county until the war is over. The county's business would become paralyzed. The Constitution, Article 3, Section 10, requires the presence of two-thirds of each house of the Legislature for the transaction of business by such house. If more than one-third of our senators should join the Army, the Legislature could not function, and the State would be without funds on which to operate. If two

members of this Court or any Court of Civil Appeals should join the armed forces without resigning their offices, the Governor would be without authority to appoint their successors, and the court would be unable to function. The State would be without a judicial system. The same would be true if two members of the Court of Criminal Appeals should join the Army. Criminals could violate the law with impunity, for there would be no court to affirm a judgment of conviction and terminate the litigation in the event of an appeal.

A fundamental canon of constitutional construction is that the conditions existing at the time of the adoption of a constitutional amendment may and should be looked to for the purpose of determining the intent of the amendment. Equally fundamental is the rule that a construction of a constitutional provision which leads to great public inconvenience or to the sacrifice of great public interests, or to unjust discrimination, or to absurd consequences, will not beadopted if the provision is reasonably susceptible of an interpretation which will avoid such consequences—this upon the ground that the court will not impute to the people an intent to sacrifice or prejudice great public interests, where that intent is not clearly expressed by the people themselves. 16 C. J. S., p. 56; Koy v. Schneider, 110 Texas 369, 218 S. W. 479, 221 S. W. 880.

In my opinion Judge Dixon by accepting the office in the United States Army thereby abandoned his office as district judge. If he has so abandoned his office, then it is conceded by petitioner that he had no right to serve as special judge in his place during his absence. If he was not entitled to serve in such position, it necessarily follows that he was not entitled to compensation for his services, and the petition for mandamus should be denied.

Opinion delivered December 26, 1942.