

# THE ATTORNEY GENERAL

# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

July 15, 1948

Hon. Perry L. Jones
County Attorney
Travis County
Austin, Texas

Opinion No. V-635

Re: Legality of personnel
of the Regular United
States Air Force vot-
ing in Texas elec-
tions

Dear Mr. Jones:

Reference is made to your letter of recent date wherein you request our opinion on the above captioned matter. We quote from your letter as follows:

"I received the enclosed letter from the Legal Officer out at Bergstrom Field.

"You will note he is asking whether members of the Regular Air Force personnel come under Article 6, Sections 1 and 2a of the Constitution of Texas which prohibits voting by Regular Army and Navy personnel.

"I do not have the Federal statutes pertaining to the consolidation of the Army and Navy, however, it is my understanding, and belief, that the Regular Air Force personnel is now a part of the Regular Army and Navy defense set-up. However, this question is one of state wide interest and I believe should be passed upon by your office rather than by myself."

In 1947, the 80th Congress, First Session, passed the "National Security Act of 1947." We quote from the pertinent portions of said Act found in U. S. Code, Congressional Service, 80th Congress, pages 503-507:

"Sec. 201. (a) There is hereby established the National Military Establishment, and the Secretary of Defense shall be the head thereof.

"(b)  The National Military Establishment shall consist of the Department of the Army, the Department of the Navy, and the Department of the Air Force, together with all other agencies created under title II of this Act. . .

"Sec. 208.  (a) The United States Air Force is hereby established under the Department of the Air Force. The Army Air Forces, the Air Corps, United States Army, and the General Headquarters Air Force (Air Force Combat Command), shall be transferred to the United States Air Force.

"(b)  There shall be a Chief of Staff, United States Air Force, who shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years from among the officers of general rank who are assigned to or commissioned in the United States Air Force. Under the direction of the Secretary of the Air Force, the Chief of Staff, United States Air Force, shall exercise command over the United States Air Force and shall be charged with the duty of carrying into execution all lawful orders and directions which may be transmitted to him. The functions of the Commanding General, General Headquarters Air Force (Air Force Combat Command), and of the Chief of the Air Corps and of the Commanding General, Army Air Forces, shall be transferred to the Chief of Staff, United States Air Force. When such transfer becomes effective, the offices of the Chief of the Air Corps, United States Army, and Assistants to the Chief of the Air Corps, United States Army, provided for by the Act of June 4, 1920, as amended (41 Stat. 768), and Commanding General, General Headquarters Air Force, provided for by Section 5 of the Act of June 16, 1936 (49 Stat. 1525), shall cease to exist. While holding office as Chief of Staff, United States Air Force, the incumbent shall hold a grade and receive allowances equivalent to those prescribed by law for the Chief of Staff, United States Army. The Chief of Staff, United States Army, the Chief of Naval Operations,

and the Chief of Staff, United States Air Force, shall take rank among themselves according to their relative dates of appointment as such, and shall each take rank above all other officers on the active list of the Army, Navy, and Air Force: PROVIDED, That nothing in this Act shall have the effect of changing the relative rank of the present Chief of Staff, United States Army, and the present Chief of Naval Operations.

"(c) All commissioned officers, warrant officers, and enlisted men, commissioned, holding warrants, or enlisted, in the Air Corps, United States Army, or the Army Air Forces, shall be transferred in branch to the United States Air Force. All other commissioned officers, warrant officers, and enlisted men, who are commissioned, hold warrants, or are enlisted, in any component of the Army of the United States and who are under the authority or command of the Commanding General, Army Air Forces, shall be continued under the authority or command of the Chief of Staff, United States Air Force, and under the jurisdiction of the Department of the Air Force. Personnel whose status is affected by this subsection shall retain their existing commissions, warrants, or enlisted status in existing components of the armed forces unless otherwise altered or terminated in accordance with existing law; and they shall not be deemed to have been appointed to a new or different office or grade, or to have vacated their permanent or temporary appointments in an existing component of the armed forces, solely by virtue of any change in status under this subsection. No such change in status shall alter or prejudice the status of any individual so assigned so as to deprive him of any right, benefit, or privilege to which he may be entitled under existing law.

"(d) Except as otherwise directed by the Secretary of the Air Force, all property, records, installations, agencies, activities, projects, and civilian personnel under the jurisdiction, control, authority,

or command of the Commanding General, Army
Air Forces, shall be continued to the same
extent under the jurisdiction, control, au-
thority, or command, respectively, of the
Chief of Staff, United States Air Force, in
the Department of the Air Force.

"(e) For a period of two years from
the date of enactment of this Act, person-
nel (both military and civilian), property,
records, installations, agencies, activities,
and projects may be transferred between the
Department of the Army and the Department of
the Air Force by direction of the Secretary
of Defense." (Emphasis added.)

The last sentence of section 1 of Article III
of the Texas Constitution of 1845 reads as follows:

". . . and provided further, that no sol-
dier, seaman, or marine in the Army or
Navy of the United States shall be entit-
led to vote at any election created by this
Constitution."

A similar provision was contained in all the
Constitutions adopted by this State subsequent to the
Constitution of 1845, and we call your particular at-
tention to a part of section 1 of Article VI of the
Constitution of 1876, which reads as follows:

"The following classes of persons
shall not be allowed to vote in this State,
to-wit: . . .

"Fifth: All soldiers, marines and
seamen, employed in the service of the
Army or Navy of the United States."

In 1932 the above provision of the Constitu-
tion was amended by adding thereto the following:

"Provided that this restriction shall
not apply to officers of the National Guard
of Texas, the National Guard Reserve, the
Officers Reserve Corps of the United States,
nor to enlisted men of the National Guard,
the National Guard Reserve, and the Organ-
ized Reserves of the United States, nor to

retired officers of the United States Army,
Navy, and Marine Corps, and retired warrant
officers and retired enlisted men of the
United States Army, Navy, and Marine Corps."

Not only was the above provision in section 1
of Article VI of the Texas Constitution amended so as
to allow the above named personnel of the Armed Services
to vote, but at the same time sections 33 and 40 of Article XVI of the Constitution were also amended so as to
allow them to hold public offices.

In order to answer your question, it is necessary for us to determine the meaning of the provision
contained in our various Constitutions relative to the
prohibition against service men voting, and particularly
the provision in our Constitution of 1876 and the amendment to the same as adopted in 1932. In doing this, we
call your attention to the statement of the Supreme
Court in the case of Travelers Insurance Company v. Marshall, 124 Tex. 45, 76 S.W.(2d) 1007, which is as follows:

"The meaning which a constitutional
provision had when adopted, it had today;
its intent does not change with time nor
with conditions; while it operates upon
new subjects and changed conditions, it
operates with the same meaning and intent
which it had when formulated and adopted.
9 Texas Jur. p. 427; Sec. 18; 6 Ruling
Case Law, p. 46, Sec. 39; Cooley's Constitutional Limitations (8th Ed.) vol. 1, p.
123. As Judge Cooley says: 'A constitution is not to be made to mean one thing
at one time, and another at some subsequent time when the circumstances may have
so changed as perhaps to make a different
rule in the case seem desirable. * * * It
is with special reference to the varying
moods of public opinion, and with a view
to putting the fundamentals of government
beyond their control, that these instruments are framed . . . THE MEANING OF
THE CONSTITUTION IS FIXED WHEN IT IS ADOPTED, AND IT IS NOT DIFFERENT AT ANY SUBSEQUENT TIME WHEN A COURT HAS OCCASION TO
PASS UPON IT.' Cooley's Const. Lim. vol.
1, pp. 123, 124 (Italics ours)."

The members of the Constitutional Conventions of 1845 and 1875 and the voters of Texas who adopted the above quoted provision in 1876 which deprived "all soldiers, marines and seamen, employed in the service of the Army or Navy of the United States" from voting at elections in this State, certainly intended to exclude all members employed in any branch of the Armed Services of the United States from voting at elections in this State. We are sustained in this conclusion by the holding of the court in the case of Savage v. Humphries, 118 S.W. 893, rendered prior to the 1932 amendment, wherein the court held that a member of the National Guard employed in the service of the Army of the United States was not entitled to vote under the State Constitution. This holding is very significant in view of the fact that the words "Texas National Guard" were not used in the constitutional provision of 1876 that the court was construing in the instant case, and what is more, the Texas National Guard was not authorized nor organized until 1903. (See Senate Bill 165, Acts of the 28th Legislature, Regular Session, 1903, p. 206, and the biennial reports of the Adjutant General for the years 1903-1904). Also, in the case of State v. Degress, 53 Tex. 387, the court held that the retired officers constitute a part of the Army of the United States and as a consequence are held to occupy an office of profit or trust under the United States within the meaning of Article XVI, section 33 of the Constitution. (This decision was also rendered prior to the amendment of 1932).

From the foregoing it can be clearly seen that the spirit and intent of the provision contained in the Constitution of 1876 prohibited all members of the Armed Forces of the United States Government from voting in elections in this State, regardless of whether they were known by the name of soldiers, marines, or seamen in the service of the Army or Navy of the United States, or by some similar or comparable name. Of course, as times and conditions have changed, we have gone through two of the most devastating wars in the history of the Nation, and it has been necessary that the Armed Forces of the United States be reorganized from time to time so as best to cope with the emergencies. But at the same time, we think it is immaterial as to the name or names by which said branches of the Armed Forces have been known. As stated in the case of Travelers Insurance Co. v. Marshall, supra, "A Constitution is not to be made to mean one thing at one time and another at some subsequent time when the circumstances may have so changed as perhaps to make a

different rule in the case seem desirable." The meaning of the Constitution is fixed when it is adopted, and it is no different at any subsequent time, and the same can only be changed by a vote of the people in a proper election called for that purpose.

In 1932 the voters of this State adopted an amendment to section 1, Article VI, which excludes from the provision thereof officers of the National Guard of Texas, National Guard Reserve, Officers Reserve Corps of the United States, enlisted men of the National Guard, the National Guard Reserve, Organized Reserves of the United States, retired officers of the United States Army, Navy and Marine Corps, and retired warrant officers and retired enlisted men of the United States Army, Navy and Marine Corps.

From the effective date of the amendment of 1932 it was intended that all persons above named could participate in the elections of this State provided they possessed the other necessary qualifications for voting. However, if the members of the Armed Forces of the United States are to come within one of the above enumerated exceptions, then they must clearly bring themselves thereunder. As stated by the Supreme Court in the case of Cramer v. Sheppard, 140 Tex. 271, 167 S.W.(2d) 147, "In construing or interpreting the constitutional and statutory provisions which define a general rule and then provide exceptions thereto, one claiming under the exception must clearly bring himself thereunder."

To our minds, the rule has not been met in this instance for the members of the Regular United States Air Force cannot clearly come under the exceptions contained in subsection 5, section 1, Article VI of our Constitution. Also, you will observe from reading the "National Security Act of 1947" that "no such change in status shall alter or prejudice the status of any individual so assigned, so as to deprive him of any right, benefit or privilege to which he may be entitled under existing law." Certainly, the National Congress did not intend to deprive a member of the Regular Air Force of the United States of any privilege or benefit that he might be entitled to under the existing law. On the other hand, it did not intend to give such individual any special right, benefit or privilege not enjoyed by the other members of the Regular Armed Forces of the United States.

In addition to the foregoing, you will observe

from reading the underlined portion of the National Security Act above quoted, that for a period of two years from the enactment of said Act, military personnel may be transferred between the Department of the Army and the Department of the Regular Air Force by direction of the Secretary of Defense. This clearly shows that at least for two years it is possible for the members of the Regular Air Forces of the United States to also be members of the Regular Army, or for the members of the Regular Army to be members of the Regular Air Force. Further, a careful study of the entire "National Security Act of 1947" convinces us that the personnel of the Regular United States Air Force come within the prohibition contained in subsection 5, section 1, Article VI of the Texas Constitution, and it is, therefore, our opinion that they cannot vote at the elections held in this State.

SUMMARY

  Members of the Regular United States Air Force are prohibited from voting at elections in this State. Subsection 5, section 1, Article VI, Texas Constitution.

      Yours very truly,

     ATTORNEY GENERAL OF TEXAS

JCD:wb:mw

    By *J. C. Davis, Jr.*
     J. C. Davis, Jr.
     Assistant


APPROVED:

*Fagan Dickson*
FIRST ASSISTANT
ATTORNEY GENERAL