The CHIEF JUSTICE,
 

 on the Monday following, de- ,. livered the opinion of the court.
 

 ' • The application for the writ of error, is made under the 25th .section of the Judiciary Act of 1789, which makes provision'for the exercise of the appellate jurisdiction of this court over judgments and decrees of the courts of the States.
 

 /' Neither ,the act of 1789, nor the-act of 1867, which -in some particulars supersedes and replaces the act of 1789, makes any distinction between civil and criminal cases in ;/respect to the revision of the judgments of State courts by this court; nor are we aware that it has ever been contended ■that any such distinction exists. ‘Certainly none has been recognized here. ‘ No objection, therefore, to the allowance Of the writ of error asked for by the petition can arise from .the circumstance that, the judgment, which we are asked'to review, was rendered in a,criminal case.
 

 But writs of errorito State courts have never been, allowed, as of right. , It has always been the practice to submit the record of the State,'courts, to a judge of this court, whose duty has,been to ascertain upon examination whether any-question,-cognizable here upon appeal, was made and decided in the proper court erf the State, and whether the cáse upon the face of the record will justify the allowance of the writ.
 

 In general, the allowance will be made where the decision appears to have involved a question within our appellate jurisdiction; but refusal' to allow the writ is the proper poursewhen no such question-appears to'have been-made, oi
 
 *325
 
 decided; and also where, although a claim of right under the Constitution or laws of the United States may have been made, it is nevertheless clear that the application for the writ 1 is made under manifest misapprehension as to the jurisdiction of this court.
 

 In the case before us we have permitted the motion for allowance to be argued before the full bench because of the urgency of the case, and the momentous importance of the result to the petitioner.
 

 It is claimed that the writ should be allowed upon the ground that the indictment, upon which the judgment of the State court was rendered, was framed under a statute of Pennsylvania in disregard of the 5th and 6th Amendments of the Constitution of the United States, and that this statute is especially repugnant to that provision of the 6th Amendment which declares, “ that in all criminal prosecutions the accused shall enjoy the right” “to be informed of the nature and cause of the accusation agdinst him.”
 

 The statute complained of was passed March 30, 1860, and provides that “in any indictment for murder or manslaughter it shall not be necessary to set forth the manner in which, or the means by which the death of the deceased was caused; but it shall be sufficient, in every indictment for murder, to .charge that the defendant did feloniously, wilfully, and of malice aforethought, kill and murder the deceased; and it shall be sufficient, in any indictment for manslaughter, to charge that the defendant did feloniously kill the deceased.”
 

 We are by no means prepared to say, that if it were an open question whether the 5th and 6th Amendments of the' Constitution apply to the State governments, it would not be our duty to allow the writ applied for and hear argument on the question of repugnancy. ■ We think, indeed, that it. would. But the scope arid application of these amendments are no longer subj ects of discussion here.
 

 In the case of
 
 Barron
 
 v.
 
 The City of
 
 Baltimore,
 
 *
 
 the whole
 
 *326
 
 question was fully considered, upon a writ ot error to the Court of Appeals of the State of Maryland. The error alleged was, that the State court'sustained the action of the defendant under an act of the State legislature, whereby the property of the plaintiff was taken-for public use in violation of the 5th Amendment. The court held that its appellate jurisdiction-did-not extend to the case presented by the writ of error; and- Chief Justice Marshall, declaring the .unanimous judgment of the court, said:
 

 “
 
 The question presented is, we think, of greát importarice) but not of much difficulty. . . . The Constitution was.ordained and established by the people of the United States for themselves, for their own government, and not for the government of the individual States. Each State established a constitution for itself, and in that constitution provided such limitations and ■restrictions on the powers of its particular .-government as'its' judgment dictated. The people of the United States framed such a government for the United States as they supposed beat adapted to their situation and best calculated to promote t'heir interests. The powers théy'conferr’ed on this government were to’ be exercised by itself'; and the limitations on power, if expressed in general terms, are naturally, and, we think, neces. sarily applicable to the government created by the instrument. They are limitations of power granted in the instrument its.elf, not of distinct governments frai ,>d by different persons and for different purposes.”
 

 Aucl,-in conclusion,-after a thorough examination of the several amendments which had. then (1833) been adopted, he observes:
 

 “ These amendments contain no expression indicating an intention to apply them to State governments. - This court cannot so apply them.”
 

 And this judgment has since .been frequently reiterated, and always without dissent.
 

 That they “ were not designed as limits upon the State governments in reference to their own citizens,” but “ ex
 
 *327
 
 clusively as restrictions upon Federal power,” was declared in
 
 Fox
 
 v.
 
 Ohio,
 
 ,to be “ the only rational and intelligible interpretation which these amendments can have.”
 
 *
 
 And language equally decisive, if less emphatic, may be found in
 
 Smith
 
 v.
 
 The State of
 
 Maryland,
 
 †
 
 and
 
 Withers
 
 v.
 
 Buckley and others.
 

 ‡
 

 ■-In the views thus stated and supported we entirely concur. They apply to the sixth as fully as to any other of the amendments. It is certain that we can acquire no jurisdiction of the .case of the petitioner by writ of error, and we are obliged, therefore to
 

 Refuse the writ.
 

 *
 

 7 Peters, 243.
 

 *
 

 5 Howard, 434.
 

 †
 

 18 Id. 76.
 

 ‡
 

 20 Id. 90.