**Joseph Stanley FAULDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Joseph Stanley FAULDER, Relator,**

v.

**Odis R. HILL, Criminal District Attorney, Gregg County, Respondent.**

**No. 60554.**

Court of Criminal Appeals of Texas, En Banc.

July 2, 1980.

On Denial of Rehearing March 11, 1981.

See, also, Tex.Cr.App., 611 S.W.2d 630.

Vernard G. Solomon, Marshall, for relator.

Odis R. Hill, Dist. Atty., Longview, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant Faulder was convicted of capital murder and received the death penalty. On appeal this Court reversed the conviction. The State, by and through Gregg County Criminal District Attorney Hill has filed a motion to stay the mandate of reversal in order that review may be sought in the United States Supreme Court pursuant to 28 U.S.C. Sec. 1257(3). Faulder has filed an application for writ of prohibition to prevent Hill from seeking such review.

The power of this Court to issue writs of prohibition is granted in Art. 5, Sec. 5, of the Texas Constitution:

"Subject to such regulations as may be prescribed by law, regarding criminal law matters, the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writs of habeas corpus, mandamus, procedendo, prohibition, cer-

tiorari, and such other writs as may be necessary to protect its jurisdiction or enforce its judgments."

The function of a writ of prohibition was stated in *State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex.Cr.App.):

"It has been said that 'a writ of prohibition is that process by which a superior court prevents inferior courts, tribunals, officers, or persons from usurping or exercising jurisdiction with which they have not been vested.' 73 C.J.S. Prohibition Sec. 1, p. 9."

If the State, through the office of its Criminal District Attorney of Gregg County, is preparing to seek review of this Court's decision in Faulder's case, and if such action is beyond the jurisdiction or power of that office, then a writ of prohibition would be available to prevent such an usurpation of authority.

■ Faulder argues the proposed action by Hill is outside the power of his office because of the prohibition of Article 5, Sec. 26, of the Texas Constitution, which provides:

"The State shall have no right of appeal in criminal cases."

Faulder also relies on the similar provision of the Code of Criminal Procedure, Art. 44.01, and on the plurality dictum and concurring opinion in *White v. State*, 543 S.W.2d 366 (Tex.Cr.App.).

Hill replies with the argument that by virtue of the supremacy clause of the United States Constitution, Article VI, the provision of the Texas Constitution relied on by Faulder must yield to 28 U.S.C. Sec. 1257(3), which provides:

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

". . .

"(3) By writ of certiorari, . . . where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of, or commission held or authority exercised under, the United States."

We reject at the outset the notion that the supremacy clause and Sec. 1257(3) play a significant role in the analysis of whether a writ of prohibition should issue. The federal statute relied on by Hill is concerned with the jurisdiction of the Supreme Court to hear a case, i. e., with the power of that Court. We do not, nor could we, propose to rule on what cases that Court may or may not hear. The issue raised by Faulder, in contrast, is not one of the power of the Supreme Court, but of the power of the Criminal District Attorney of Gregg County.

Before jurisdiction may be exercised, it must be legally invoked. *State v. Olsen*, 360 S.W.2d 398, 400 (Tex.). Faulder challenges the capacity of the Criminal District Attorney, as a state officer, to invoke the jurisdiction of any court to review a criminal case. The powers of that office, argues Faulder, are restricted by the provision of the Texas Constitution which declares "The State shall have no right of appeal in criminal cases."

A simple example should illustrate the distinction between questions of the power of the Supreme Court to hear a case and the power of the State prosecutor to request that Court to exercise jurisdiction. It is well established that a party to a law suit, including a defendant in a criminal case, may waive the right of appeal, as well as many other rights and protections. If the party waives that right, then his attorney is without authority to pursue the appeal even though courts exist with jurisdiction to hear an appeal in the case, if brought before it. Denial to the attorney by the client of the power to seek review is wholly distinct and independent of the power of the reviewing court to hear the case. See generally *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). If Art. 5, Sec. 26, supra, were construed as an instruction to the attorneys representing the State in criminal cases, from their client, the people of Texas, that the purpose for which they are retained does not include seeking an appeal, i. e., as an instruction that they shall not appeal in criminal cases, the parallel to our example of waiver would

be complete. The parallel, however, is drawn here merely for purposes of illustrating the distinction between the issue of the jurisdiction of the Supreme Court, and the issue of the authority of the prosecuting attorney under State law. Having sharpened that distinction, we reiterate that the former issue is not in this case, and move on to the latter.

Faulder's argument, simply stated, is that this is a criminal case, action by respondent seeking review of his case by the Supreme Court would constitute an appeal, and the express prohibitions of Art. 5, Sec. 26, supra, and Art. 44.01, V.A.C.C.P., would be violated by such action on the part of respondent Hill. The plurality dictum expressed in *White v. State*, supra, correctly concluded, and respondent does not dispute, that a case such as this one is a criminal case, and that review of the case, whether denominated an appeal, a writ of error, a writ of certiorari, or any other name, is still an appeal. Beyond this part with which we agree, the plurality in *White* concluded "that a petition for certiorari in the Supreme Court in a case such as [this] one before us is an appeal of a criminal case," and therefore prohibited by Art. 5, Sec. 26, supra. Today we reach a different conclusion, based on the scope of the prohibition of Section 26, as considered in light of the constitutional context of that prohibition.

Article 5 of the Texas Constitution is entitled "Judicial Department." It establishes the structure, powers, and responsibilities of the judicial branch of the State of Texas. As such, it is addressed to the derivation, characteristics, and internal relations of that system, and does not speak to the relation of that system or a part of that system to entities beyond, such as the federal judiciary. In this context, we construe the outer limits of the prohibition of Section 26 to be a restriction on the permissible operations within the Texas judicial system. This holding on the outer limits of the scope of Sec. 26 is sufficient to support our conclusion that no violation of that provision would occur by respondent filing applica-

tion for writ of certiorari in the Supreme Court to review our decision in appellant-relator's case. Consequently, in deciding this case it is unnecessary to make further examination of Sec. 26 with respect to the exact scope of its restriction within the Texas judicial system.

■ For these reasons, we hold Art. 5, Sec. 26, of the Texas Constitution does not prohibit respondent from seeking review of our decision in this case by application for writ of certiorari in the Supreme Court of the United States. The application for writ of prohibition is denied.

It is the practice of this Court to issue a stay of mandate for thirty days when review of a decision of this Court is sought by an unsuccessful appellant in a death penalty case. We similarly issue such a stay in this case. The motion to stay the mandate is granted for thirty days.

It is so ordered.

DOUGLAS, Judge, concurring.

I concur for the reasons in the dissent to the plurality opinion in *White v. State*, 543 S.W.2d 366, 370 (Tex.Cr.App.1976), on remand from the Supreme Court of the United States.

The question is answered in 1914 in *Harrison v. St. Louis & S. F. R. Co.*, 232 U.S. 318, 34 S.Ct. 333, 58 L.Ed. 621.

The St. Louis and San Francisco Railroad Company was a corporation chartered under the laws of Missouri. It operated in interstate commerce and had hundreds of miles of railroads in Oklahoma. In 1980 the company was sued by a resident of Oklahoma in a state court. On the ground of diversity of citizenship the railroad company filed to remove the case to a federal court. The acting Secretary of State for Oklahoma under a state statute declared the license of the railroad company forfeited because it had filed to remove the case to federal court. The Supreme Court wrote:

> "It may not be doubted that the judicial power of the United States as created by the Constitution and provided for by Congress pursuant to its constitutional authority is a power wholly independent of state action, and which therefore the several states may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious. *The doctrine is so elementary as to require no citation of authority to sustain it.* Indeed, it stands out so plainly as one of the essential and fundamental conceptions upon which our constitutional system rests, and the lines which define it are so broad and so obvious, that, unlike some of the other powers delegated by the Constitution, where the lines of distinction are less clearly defined, the attempts to transgress or forget them have been so infrequent as to call for few occasions for their statement and application." (Emphasis supplied)

It can be readily seen that the Texas Constitutional Provision as construed by the dissenters would prevent the State of Texas seeking relief upon a federal question as the Supreme Court wrote in the *Harrison* case the judicial power of the United states as created by the Constitution of the United States is a power wholly independent of state action and the states may not destroy, abridge or limit that power.

The dissenting opinion in the present case would have sounded more reasonable after Texas had seceded from the United States and before the questions were settled in the war between the states, but that war has been over for quite a few years and we are now a part of the United States. The Constitution of the United States applies to all states.

The Constitution of the State of Texas can no more prevent the State from seeking relief in our federal courts than it could prevent a defendant in a criminal case from seeking to exert a federal right in a federal court.

There has been some hesitancy on the part of prosecutors to exert the rights of citizens of Texas to the highest court of our land because of the plurality opinion in *White v. State*, supra. It would be helpful for that court to say again what it said in the *Harrison* case.

DALLY, Judge, concurring.

I concur in the result reached by the majority; however, I am unwilling to concede that "appeal" as used in Art. 5, Sec. 26 of the State Constitution includes review by writ of error or writ of certiorari.

ROBERTS, Judge, concurring and dissenting.

### I.

A majority of the Court apparently agree on the threshold questions in this case: that this Court has jurisdiction to issue a writ of prohibition, that petitions to the Supreme Court for writs of certiorari are "appeal[s] in criminal cases,"[1] and that this case involves the constitutional powers of the State of Texas rather than the supremacy clause in Article VI of the United States Constitution.[2] With these holdings I concur. On the remaining, crucial question the Court is unable to speak with a majority voice.

### II.

"The State shall have no right of appeal in criminal cases." Texas Constitution, Article V, Section 26. I believe that this provision means what it says. *White v. State*, 543 S.W.2d 366 (Tex.Cr.App.1976) (opinion of Roberts, J.). Its meaning has been accepted for a hundred years. When a constitutional provision is so clear and unequivocal, and its meaning is so well settled, its apparent command should be overridden by only the most compelling considerations. The majority have not advanced any compelling argument to support their result.

The opinion for a plurality[3] of three judges would hold that Article V, Section

1. Only Judge Dally does not agree with this holding.

2. Only Judge Douglas does not agree with this holding.

3. If "plurality" were used in its root sense of "more," the true plurality would be the four dissenting judges who share a common view that Section 26 forbids further appeal. By custom "plurality" also refers to the opinion on the prevailing side which has the most support.

26, applies only to appeals among the courts of our state. And what is the support for this assertion? It is that,

> "Article 5 of the Texas Constitution is entitled 'Judicial Department.' It establishes the structure, powers, and responsibilities of the judicial branch of the State of Texas. As such, it ... does not speak to the relation of that system or a part of that system to entities beyond, such as the federal judiciary."

Of course, that assumes the very thing that is at issue: whether part of Article V does speak to the relation of Texas to the federal judiciary. In logic this fallacy is called *petitio principii*—begging the question. Even on its own terms the argument fails. Consider Article IV of our Constitution; it is entitled "Executive Department," and it establishes the structure, powers, and responsibilities of the executive branch of the State of Texas. Nonetheless it does speak to the relation of that system to entities beyond; see Texas Constitution, Article IV, Section 10.[4] The drafters of the Constitution evidently did not think that the title "Executive Department" limited the scope of Article IV to intrastate matters; why should the title "Judicial Department" limit the scope of Article V? That would be to decide an important constitutional question on irrelevant, superficial grounds.

Even worse, the plurality opinion ignores the will of the people who adopted the Constitution of 1876. If today's plurality opinion were followed, the state would be forbidden to appeal a directed verdict of not guilty (for example) to this Court, but it could appeal to the Supreme Court of the United States. Can the plurality believe that the Constitution of 1876, which declares in its very first section that "the

In this case, as in *White v. State*, 543 S.W.2d 366 (Tex.Cr.App.1976), the leading opinion does not have majority support on the meaning of our constitution; to borrow Judge Odom's phrase, it is "plurality dictum."

4. "[The Governor] ... shall conduct, in person, or in such manner as shall be prescribed by law, all intercourse and business of the State with other States and with the United States."

maintenance of our free institutions and the perpetuity of the Union depend upon the preservation of the right of local self-government unimpaired to all the States," was designed to allow the State to turn to a federal court more easily than to the state courts? Can the plurality believe that the voters of 1876, who had lately seceded from the United States and who were repealing the reconstruction Constitution of 1869, intended to submit to a federal court questions which they would not entrust to their state courts? The plurality opinion ignores this history, as it ignores the century of agreement on the meaning of the plain words in Section 26. Its reasoning does not even support, much less compel, its result.

A fourth judge reiterates his view which he expressed in *White v. State*, 543 S.W.2d 366, 370 (Tex.Cr.App.1976) (opinion of Douglas, J.), that states have federally-created rights to appeal which cannot be denied even by their own constitutions. He is alone in that view of constitutional law. *Harrison v. St. Louis & S. F. R. R.*, 232 U.S. 318, 34 S.Ct. 333, 58 L.Ed. 621 (1914) is irrelevant. There a state tried to prevent a separate entity (a corporation) from exercising its right to litigate in federal court. Had the corporation simply chosen not to litigate, no federal question would have been presented. The question before us is whether the State of Texas has chosen, in its Constitution, never to appeal a criminal case. No separate entity would be prevented from doing anything;[5] the question is one of internal choice, not external coercion as in *Harrison*.

The final opinion that would deny the writ of prohibition does not concede that "appeal" as used in Section 26 includes review by writ of certiorari. Because that opinion is the deciding one, it effectively determines the law. Our holding today, therefore, is that the State can petition the United States Supreme Court for a writ of certiorari; we have not decided whether the State can appeal. In effect the meaning of our state constitution turns on the procedural vagaries of Title 28 of the United States Code. I cannot believe that the Constitution of 1876 was intended to grant or deny an organic power on such an extraneous basis.

An important constitutional question has come before us. The Court has effectively rewritten our constitution, without the approval of the voters, by accumulating two inadequate reasons and one misunderstanding of constitutional law. This is not a bright day in the history of this Court.

To the denial of the writ of prohibition, I dissent.

PHILLIPS, J. joins.

ONION, Presiding Judge, dissenting.

Courts are reluctant to decide constitutional questions and they should be passed on only when raised and when the necessity arises. 12 Tex.Jur.2d, Constitutional Law, § 14, p. 362. I am convinced there is no necessity to pass on the constitutional question here involved. A statute answers the question. Further, if the constitutional question is to be reached, I have concluded the majority opinion, which ignores the rules of constitutional construction and uses artificial and simplistic reasoning, is wrong, dead wrong. For these reasons, I dissent.

The relator Faulder was convicted of capital murder and received the death penalty. On appeal his conviction was reversed in a 6–3 decision because his extrajudicial confession, which was admitted into evidence, was obtained in violation of his Fifth Amendment, United States Constitution, rights, and in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Michigan v. Mosley*, 423 U.S. 96,

---

5. Misunderstanding of this elementary fact is revealed in the concurring opinion's statement: "The Constitution of the State of Texas can no more prevent the State from seeking relief in our federal courts than it could prevent a defendant ...." This is to speak of the State as though, like a defendant or a railroad, it were an entity apart from the Constitution of the State of Texas. The question cannot be whether the State has an inherent power which it is being prevented from using; it is whether Article V, Section 26, means that it is without a power to appeal this case.

96 S.Ct. 321, 46 L.Ed.2d 313 (1975), and cases decided by this court. See also Article 38.22, V.A.C.C.P.

The State, by and through its Criminal District Attorney of Gregg County, the Honorable Odis R. Hill, has filed a motion to stay this court's mandate of reversal in order that the State may obtain review of this court's decision in the United States Supreme Court pursuant to 28 U.S.C., § 1257(3). Respondent Hill is candid. He makes no pretenses, and by pleading and oral argument makes clear he wants to appeal the decision of this court. Relator Faulder has filed an application for a writ of prohibition to prevent Hill from seeking such review. Relator relies upon Article V, § 26 of the Texas Constitution and Article 44.01, V.A.C.C.P., which prohibit appeal by the State in criminal actions or cases.

Germane to this discussion is the official oath prescribed by the Texas Constitution (Article XVI, § 1), which the Respondent Hill and the members of this court have taken. It prescribes in part:

> "I ... will to the best of my ability *preserve, protect, and defend the Constitution and laws* of the United States and *of this State* ; ...." (Emphasis supplied.)

The remedy sought by the relator is a writ of prohibition. Under the 1977 amendment to Article V, § 5 of the Texas Constitution this court, subject to such regulations as may be prescribed by law, has, "regarding criminal law matters," the power to issue writs of prohibition and the same is not limited to a writ necessary to protect this court's jurisdiction or enforce this court's judgment. *Thomas v. Stevenson*, 561 S.W.2d 845 (Tex.Cr.App.1978) (Concurring Opinion).

In *Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex.Cr.App.1971), this court stated:

> "It has been said that 'a writ of prohibition is that process by which a superior court prevents inferior courts, tribunals,

officers, or persons from usurping or exercising jurisdiction with which they have not been vested.' 73 C.J.S. Prohibition § 1, p. 9."

It seems that if the Respondent Hill in his official capacity as the Criminal District Attorney of Gregg County is seeking, as he claims, an appeal or review of this court's decision in the *Faulder* case, and if such action is beyond the jurisdiction or power of his office, then a writ of prohibition would be available to prevent such a usurpation of authority.

Next to be considered is whether the action the respondent Hill seeks to take—review of this court's judgment by writ of certiorari in the United States Supreme Court—is an appeal in a criminal action or case. There can be no question but that the offense of capital murder, V.T.C.A., Penal Code, § 19.03, for which Relator Faulder was tried and convicted and assessed the death penalty, is a penal offense. And it is further noted his appeal was to this court, which is the only court in the state with appellate jurisdiction in all criminal cases. Article V, § 5, Texas Constitution. Thus, there is no quarrel that we are dealing with a criminal action or case.[1] Is, however, the action sought to be taken by Respondent Hill an "appeal"?

Long prior to the adoption of the 1876 Constitution the Supreme Court of the Republic of Texas in *Republic v. Smith*, Dallam, 407, 408, 409, defined an appeal as "a complaint to a superior court of injustice done by an inferior one." See also *Cottrell v. Board of County Commissioners of Paulding County, Ohio*, 24 Ohio N.P., N.S. 281.

Certiorari is a remedy well known to common law as a writ issued from a superior court directing an inferior court to transmit to it the record of some proceedings for review. *Zamora v. Garza*, 117 S.W.2d 165 (Tex.Civ.App.—San Antonio, 1938); *City of San Angelo v. Boehme Bakery*, 144 Tex.

---

1. In *Ex parte Wolters*, 64 Tex.Cr.R. 238, 144 S.W. 531 (1911), this court quoting from *Taylor v. Goodrich*, 25 Tex.Civ.App. 109, 40 S.W. 515, 524 (1897), stated:

> "A 'criminal case' is defined to be an action, suit, or cause instituted to secure a conviction and punishment for crime, or to punish an infraction of the criminal law."

281, 190 S.W.2d 67 (1945); *Ashworth v. Hatcher*, 98 W.Va. 323, 128 S.E. 93 (1924). In *Shapleigh Hardware v. Brumfield*, 159 Miss. 175, 130 So. 98 (1930), it was held that certiorari is an appellate proceeding for reexamination of the action of an inferior tribunal. And it has been said appeal and certiorari are analogous proceedings. *Curry v. Terrell*, 1 White & W., Civ. case, Ct.App., § 239.[2]

And in *White v. State*, 543 S.W.2d 366, 368 (Tex.Cr.App.1976), the plurality opinion stated in part " . . . it seems clear that a petition for certiorari, like a writ of error in Texas practice, is an 'appeal,' albeit a discretionary one. *Hart v. State*, supra (13 Tex.App. 555, Galveston Term 1883) . . . *Durham v. United States*, 401 U.S. 481, fn. at 483, 91 S.Ct. 858, 860, 28 L.Ed.2d 200 (1971). To say that review by certiorari does not constitute an appeal is to make a distinction without substance, since such a review necessarily involves an attempt to persuade a superior court to correct the error of the lower court."

The Respondent Hill admits the action he seeks to take is an appeal, and I do not understand the majority to question that the action the respondent seeks to take is an appeal.[3]

There does not appear to be any question that what the Respondent Hill seeks to do is to appeal a criminal action or case.

Article 44.01, V.A.C.C.P. (1965), found in Chapter 44 of the Code of Criminal Procedure, entitled "Appeal and Writ of Error," provides:

"The State shall have no right of appeal in criminal actions."

This article has remained unchanged at least since Article 836 of the 1879 Code of Criminal Procedure which was enacted by the 16th Legislature on February 21, 1879 and became effective July 24, 1879. Said Article became Article 871 in the 1895 Code

of Criminal Procedure, Article 893 in the 1911 Code of Criminal Procedure and Article 812 in the 1925 Code of Criminal Procedure. Thus, the voters of this state, through their elected representatives, have for over a hundred years repeatedly re-affirmed by statute independent of any constitutional provision a broad, firm public policy that the State shall have no right to appeal in criminal actions.

The language in the statute is definite, direct, simple and unambiguous, eliminating any need for judicial construction. The statute legally blocks Respondent Hill's efforts to seek review in the United States Supreme Court by writ of certiorari in this court's decision in the *Faulder* case. For this reason and for this reason alone the writ of prohibition should issue. This should end the matter.

The majority, however, ignores the precedent that courts should avoid deciding constitutional questions unless the necessity arises. It rushes to judgment and decides the constitutional question with only a mention and absolutely no consideration of Article 44.01, V.A.C.C.P., in the decision making process. Surely the statute must be considered in some way before the majority agrees that the application for writ of prohibition should be denied. The bench and the bar, and if you please, the public, are at least entitled to this much.

Since the 5–4 majority decides the question on the basis of the state Constitution without regard to the statute, this necessitates showing why that decision, independent of the statute, is even in error.

Article V, § 26, Texas Constitution, provides:

"The State shall have no right of appeal in criminal cases."

The Interpretive Commentary to said constitutional provision provides a brief history of the right of the State to appeal in criminal cases. It states in part:

---

**2.** In *Gould v. Klabunde*, 63 N.E.2d 258, 262, 326 Ill.App. 643 (1945), it was held an "appeal" is a review by a superior tribunal, the method of which review may be called either "certiorari" or "appeal."

**3.** Judge Dally in a brief concurring opinion is, however, unwilling to concede that "appeal" as used in Article V, § 26 of the State Constitution includes review by writ of certiorari, but regrettably he does not elaborate.

"Although the present Texas constitution denies the state *any appeal whatever,* an examination of earlier constitutions reveals that there has been no consistent regard for the defendant in this respect. The Constitution of the Republic of Mexico charged the General Congress with the duty of prescribing the procedure of the courts in criminal matters. The Constitution of 1836 of the Republic of Texas merely provided that the common law should be the rule of decision in criminal cases. The first state constitution left the matter of criminal procedure to the legislature, and the legislature in providing for criminal appeals did not confer a right of appeal upon the state until 1856.

"Although the Constitution of 1845 provided that a defendant could not be again put on trial for the same offense after a verdict of not guilty, the provision adopted in 1856 permitted the state to appeal from a sustained exception of the defendant to the indictment or information and from a sustained motion of the defendant in arrest of judgment.

"The provisions of the Constitution of 1845 were incorporated into the Constitution of 1861. The statute of 1856, permitting a limited appeal by the state, ceased to be operative upon the adoption of the Constitution of 1869, following which the prosecution was afforded a right to appeal apparently equal to that accorded the defendant in felony cases. This development was of brief duration, however, inasmuch as the present restriction came into being with the adoption of the Constitution of 1876." (Emphasis supplied.)

The constitutional prohibition represents a broad and firm public policy that has endured for over one hundred years with due observance from its public officials in accordance with their constitutional oath except for the aberration that is *White v. State,* supra. It is stated in definite, plain, simple and unambiguous language and is easily understandable. It needs no judicial construction. It has long been considered as prohibiting any and all kinds of appeal by the State in criminal cases. Citing the constitutional provision 5 Tex.Jur.2d, Appeal and Error—Criminal, § 16, p. 37, states, "The State has no right of appeal in *any criminal case.*" (Emphasis supplied.) And the article "Should the State Have an Appeal in Criminal Cases?" 1 S.W.L.J. 152 (1947) viewed the constitutional provision as denying "the state any appeal *whatsoever.*" (Emphasis supplied.) See also Interpretive Commentary, supra.

The Constitution is the fundamental law containing the principles on which the state government rests, regulating the three branches of government, and directing how each department shall exercise its powers. *Texas National Guard Armory Board v. McCraw,* 132 Tex. 613, 126 S.W.2d 627 (1939). The provisions of the Constitution, unless the contrary appears therefrom, are mandatory and not merely directory. *Ex parte Anderson,* 46 Tex.Cr.R. 372, 81 S.W. 973 (1904). The courts and prosecutors must be obedient to its commands; *Ex parte Anderson,* supra, and neither executive officers nor the judiciary can lawfully act beyond the constitutional limitations. *Traveler's Ins. Co. v. Marshall,* 124 Tex. 45, 76 S.W.2d 1007 (1934).

Turing to the rules of constitutional construction, it is observed that constitutional provisions which are not ambiguous and are not open to more than one construction or interpretation must be given their full effect without regard to the consequences. *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147 (1942); *Rawlins v. Drake,* 291 S.W.2d 349 (Tex.Civ.App.—Dallas 1956); *Bexar County Hospital District v. Crosby,* 320 S.W.2d 247, 253 (Tex.Civ.App.—San Antonio 1958); *Keller v. State,* 87 S.W. 669 (Tex.Cr.App.1905); *Koy v. Schneider,* 110 Tex. 369, 218 S.W. 479, 221 S.W. 880 (1920). And constitutional provisions will not be construed to be ambiguous and contradictory if such construction is avoidable. *Holman v. Broadway Improvement Co.,* 300 S.W. 15 (Tex.Com.App.1927). And when the signification of a phrase or clause is plainly discoverable from the words thereof, there is no reason to resort to rules of construction and effect should be given to

the meaning thus ascertained. Words will be considered to have been used in their natural sense and ordinary significance unless the context indicates the contrary. 12 Tex.Jur.2d, Constitutional Law, § 14, pp. 362–363. The language used must be presumed to have been carefully selected and the words used are to be understood as people generally understood at the time of the adoption of the Constitution. *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147 (1942); *City of Amarillo v. Love*, 356 S.W.2d 325 (Tex.Civ.App.—Amarillo 1962), err. ref. n.r.e.; *Leander Ind. Sch. Dist. v. Cedar Park Water Sup. Corp.*, 479 S.W.2d 908 (Tex.1972). See *Markowsky et al. v. Newman et al.*, 134 Tex. 440, 136 S.W.2d 808 (1940). And if a term appears to have received a judicial construction prior to its use in a constitutional provision, the inference is that it bears this signification. 12 Tex.Jur.2d, Constitutional Law, § 14, p. 363; *Carr v. Tucker*, 42 Tex. 330 (1875).[4]

It seems clear to this writer that the meaning of said § 26 of Article V is plainly discoverable from the words themselves and there is no reason to resort to rules of construction to ascertain the meaning.[5] It should be given effect as written for when the meaning of the language selected by the framers of a constitution is clear, this controls the court in interpreting it. *Ex parte Myer*, 84 Tex.Cr. 288, 207 S.W. 100 (1918).

It is also noted that whenever the language employed in a constitution is prohibitory, such as in § 26 of Article V, it is intended to be a positive and unequivocal negation. *Ex parte Anderson*, 46 Tex.Cr.R. 372, 81 S.W. 973 (1904).

Strong as a conclusion may be drawn from the plain and unambiguous language of a constitutional provision, it may still derive support from other sources. It is an historical fact that for over a hundred years courts and lawyers, law professors and the public have viewed and construed the prohibition against the State's right to appeal in a criminal case as being absolute and as applying to any type of appeal. Thus where there has been acquiescence in a practical construction for a long period of time this should be a safe guide as to the proper interpretation. See and cf. *Walker v. Baker*, 145 Tex. 121, 196 S.W.2d 324, 327 (1946).[6] General public acceptance of and acquiescence in a certain construction of the Constitution extending over a long period of time gives rise to the doctrine that affords to such acceptance persuasiveness akin to precedent. *Shepherd v. San Jacinto Junior College Dist.*, 363 S.W.2d 742 (Tex. 1962).[7]

4. As earlier noted, the word "appeal" had received a judicial construction prior to the adoption of the 1876 Constitution. In *Republic of Texas v. Smith*, Dallam 407 (1840), the Supreme Court of the Republic defined an appeal as "a complaint to a superior court of injustice done by an inferior one."

5. If the drafters of a new Constitution sought to prohibit the State's right of appeal in criminal cases, how could plainer language be found than is now contained in Article V, § 26 of the present Constitution? "There is probably no clearer or more unambiguous section than this in the entire Texas Constitution." Braden, "The Constitution of the State of Texas: An annotated and Comparative Analysis," Vol. I, p. 474 (Article V, § 26).

6. In *Walker v. Baker*, supra, it was noted that where for 100 years the State Senate did not construe the State Constitution as conferring on it power to convene at will to consider Governor's recess appointment gives weight to the construction that the Constitution does not authorize.

7. In *Newman v. State*, 187 S.W.2d 559 (Tex. Cr.App.1945), this court in a case involving a confession wrote:

"By these decisions, there is no escape from the conclusion that the Supreme Court of the United States has potential jurisdiction in all State cases where it is claimed by the accused that the conviction was based upon his involuntary confession.

"Such being true, the position this Court occupies in relation to such cases is both unique and difficult—unique, in that by the Constitution and the laws of this State, Const. Art. 5, sec. 5, Vernon's Ann.St.; Art. 812, C.C.P., we are the court of last resort in criminal cases. If we reach a conclusion that the confession was involuntary, such conclusion is binding upon the State and Society, for under our Constitution, Art. 5, sec. 26, the State is expressly denied the right of appeal in a criminal case and is therefore barred from seeking a review of that conclusion by the Supreme Court. On the other hand, if we conclude that the confession was voluntary, such conclusion is in no sense final, binding the accused only until reviewed by the Supreme Court of the United States."

"A constitution should receive a consistent and uniform interpretation, so that it is not to be taken to mean one thing at one time and another thing at another time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable." 12 Tex.Jur.2d, Constitutional Law, § 17, p. 365.

The primary rule of interpreting and construing the Constitution is to ascertain the intention of the people in adopting it and give effect to that intention. *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149 (1912); *Collingsworth County v. Allred*, 120 Tex. 473, 40 S.W.2d 13 (1931); *Ferguson v. Wilcox*, 119 Tex. 280, 28 S.W.2d 526 (1930); *Farrar v. Bd. of Trustees of Emp. Retirement System of Tex.*, 150 Tex. 572, 243 S.W.2d 688 (1951). The meaning of a Constitution is fixed when it is adopted and is not different at any subsequent time. *Cox v. Robison*, supra; *Jones v. Ross*, 141 Tex. 415, 173 S.W.2d 1022 (1943). And in interpreting the Constitution courts may look to the conditions existing at the time of adoption, general spirit of times, and prevailing sentiment. *Mumme v. Marrs*, 120 Tex. 383, 40 S.W.2d 31 (1931).

The courts, in construing the Constitution, must give effect to the intent of the people in adopting it as found in the instrument itself, and it will be presumed that the language thereof has been employed with sufficient precision to convey such intent, and where such presumption prevails nothing remains except to enforce such intent. *Holley v. State*, 14 Tex.App. 505 (1883).

Turning to 1876 we find that the people of Texas had only recently gone through a War among the States, witnessed the occupation of the state by federal troops, endured a Reconstruction Era with its carpetbaggers, and had briefly experimented with the unlimited right of appeal by the State in criminal cases. By constitutionally prohibiting the State the right of appeal in criminal cases, it is obvious they were disenchanted with their experiment. Is it reasonable to assume under the circumstances of the times that the framers of the Constitution and then the voters intended to prevent prosecutors from appealing within their own state judicial system and yet somehow to permit these same prosecutors the right to appeal the same state criminal cases to the United States Supreme Court? It is not reasonable, in fact it is absolutely unreasonable, to so conclude, given the spirit of the times. And certainly a constitutional provision must be reasonably construed in a manner not repugnant to common sense. *First National Bank v. City of Port Arthur*, 35 S.W.2d 258 (Tex.Civ.App.—Beaumont 1931). Further, my research has failed to reveal that it was ever the practice of state prosecutors at the time to appeal state criminal cases to the United States Supreme Court even when the State had the unlimited right of appeal.

Without any claim that the constitutional prohibition is ambiguous, without resort to any rules of construction, without consideration of the history of the times and without any citation of authority or precedent, the majority simply states that since the constitutional prohibition, page 104, is found in that portion of the Constitution entitled "Judicial Department" that the prohibition on appeals by the State is a restriction only within the state judicial system. What the majority overlooks is that in every earlier state constitution there was a division thereof entitled "Judicial Department" and the mere fact that the prohibition was placed for the first time under "Judicial Department" in the 1876 Constitution cannot be said, without more, to be an adoption of a public policy of a limited prohibition of the right of the State to appeal in criminal cases. In order to reach the desired result, the majority has by its own edict amended the Constitution by adding to § 26 of Article V the words "within the state judicial system." I find no justification for such action.[8]

It is not for courts to undertake to amend or rewrite the Constitution by judicial deci-

8. This is a classical example of raw judicial power—pure muscle.

sion. *Rawlins v. Drake*, 291 S.W.2d 349, 350 (Tex.Civ.App.—Dallas 1956). Only the people can do that. *Moore v. Edna Hospt. Dist.*, 449 S.W.2d 508 (Tex.Civ.App.—Corpus Christi 1969), ref. n.r.e. Those called upon to construe the Constitution are not authorized to read into the Constitution language not contained therein or by construing the Constitution differently from its plain meaning. *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147 (1942). Constitutional provisions may not be bent to meet a beneficent purpose however noble the design may be. *Ex parte Smythe*, 56 Tex. Cr.R. 375, 120 S.W. 200 (1909). Courts are not to be concerned with the wisdom or lack of wisdom of a constitutional provision and need not exert their ingenuity to find reasons to thwart the intention of the people as clearly expressed in the Constitution. *Carpenter v. Sheppard*, 135 Tex. 413, 145 S.W.2d 562 (1940).[9]

Even if it can be seriously argued that the prohibition in § 26 of Article V of the Texas Constitution is limited to the state judicial system, Respondent Hill still faces the hurdle of Article 44.01, V.A.C.C.P. Even if he can successfully bypass that barrier without violating his official oath, then by what authority does he have the right to "appeal" to the United States Supreme Court? There is no constitutional or statutory authority permitting such an "appeal," and at common law appeals by the State were unknown. See *United States v. Sanges*, 144 U.S. 310, 312, 12 S.Ct. 609, 36 L.Ed. 445 (1892).

If the majority today establishes the right of the State to appeal criminal cases to the United States Supreme Court, then it will have opened Pandora's box. Every state trial court order granting a motion to suppress evidence will raise the possibility of an "appeal" direct to the United States Supreme Court for 28 U.S.C. § 1257(3), authorizes reviews of final judgments or decrees rendered by the highest court of a state in which a decision could be had. While prohibition against appealing would still apply within the state judicial system, the wraps would be off as far as applying to the United States Supreme Court from such orders as the orders would be rendered by the highest court of the state in which a decision could be had. Speedy trials will not be speedy and the finality of judgment in a criminal case will again be lengthened.

For the reasons stated, I dissent.

ROBERTS, J., joins in this dissent except for the discussion of Article 44.01, V.A.C. C.P.

CLINTON, Judge, dissenting.

The determination by the Constitutional Convention of 1875 to take from the State its right of appeal in criminal cases and impose a constitutional prohibition against an appeal by the State in such cases was made in light of historical experiences with a variety of treatments prescribed by preceding constitutions and laws. Thus, as one researcher has reported:[1]

"The Texas experience began with the Constitution of the Republic of Mexico, which charged the General Congress with the duty of prescribing court procedure in criminal matters. The 1836 Constitution of the Republic of Texas merely provided that the common law should be the rule of decision in criminal cases. The first state constitution in 1845 delegated matters of criminal procedure to the legislature, but it provided that a defendant

---

**9.** It is true that appellants in this court apply almost weekly by applications for writ of certiorari to the United States Supreme Court after a decision of this court, and there is no question of their right to do so. It may seem unfair that the State cannot do so likewise. Our Constitution and laws must be changed only, however, in the manner prescribed by law and not by judicial whim. As a legislator, I would vote to give the citizens an opportunity to change the Constitution in this regard (review by the United States Supreme Court). Today we must vote as judges and not as legislators, however. We must follow the Constitution and the laws as written. And further, we must avoid a grandstand play designed to win popular support today for a position opposed by a constitutional provision adopted over a century ago or any other time.

**1.** Tschoepe, "Limited Right of Appeal for the State," 14 Hou.L.R. 735 at 736; see also Interpretive Commentary following Article V, Section 26, 2 Vernon's Texas Constitution 323 at 325–326.

could not be tried again for the same offense after a verdict of not guilty. In 1856 the legislature granted to the State a statutory right of appeal in two limited circumstances. The 1861 constitution incorporated the provisions of the 1845 constitution, but the statute of 1856, which permitted limited appeal by the State, became inoperative with the adoption of the 1869 constitution. The Texas Constitution of 1869 apparently gave the State and the defendant equal rights of appeal in felony cases. However, this development was of brief duration because the present restriction came into being with the adoption of the 1876 constitution." [Footnotes omitted]

That the convention proposed and the people of Texas later adopted, for the first time ever in their own history, a specific denial of right of appeal to the State is clear expression of a considered and deliberate public policy. Speculation as to reasons for embedding that policy in a constitution, indulged in interestingly by our State's Attorney, is an academic exercise in futility for, as he has discovered, a contemporary "legislative history" is not reflected in the convention journals.[2] Yet, the uncontrovertible fact is that within a relatively brief span of seven years after the "Reconstruction Constitution" of 1869 gave the State and the defendant "equal rights of appeal

in felony cases,"[3] the people of Texas stripped the State of its equality in that respect. The State has remained unequal to this day—104 years later.

A firm public policy, widely accepted and steadfastly sustained for that period of time against aggressive challenges,[4] earns for itself a degree of invulnerability that demands a considerable amount of respect from, as well as this Court, the Attorney General of Texas and the district and county attorneys who are its officers and legal representatives of the State within their respective bailiwicks. Each is, after all, a constitutional officer within the Judicial Department, Article V, Section 21,[5] except the Attorney General who is placed in the Executive Department by Article IV, Section 22.[6] The powers conferred by the Constitution upon them are exclusively theirs and the Legislature may neither assign those powers to others nor interfere with the right to exercise them, *Maud v. Terrell*, 109 Tex. 97, 200 S.W. 375, 376 (1918); *Hill County v. Sheppard*, 142 Tex. 358, 178 S.W.2d 261, 264 (1944). Despite that feature of exclusivity, however, there is "no authority to perform an act in respect to which no duty has been made to devolve upon him," *Duncan v. State*, 28 Tex.Civ. App. 447, 67 S.W. 903, 905 (1902). As to our respondent, particularly, his duties are pre-

---

2. However, a most tantalizing theory is suggested by the temper of the period and the contemporaneous holding of the Supreme Court of the United States in *Twitchell v. The Commonwealth*, 7 Wall. 321, 324, 19 L.Ed. 223 (1868) that statutory provisions for exercise of its appellate jurisdiction did not make any distinction between civil and criminal cases "in respect to the revision of the judgments of State courts by this court," and its harsh and thorough denunciation of *Confederate Texans in Texas v. White*, 7 Wall. 700, 704–708, 722–732, 19 L.Ed. 227 (1868). See *Daniel v. Hutcheson*, 86 Tex. 51, 22 S.W. 933, 938 (1893) for an account of occupation of our State's courts by the federal military government until 1870, written by Chief Justice John W. Stayton who, perhaps not so coincidentally, had been a member of the 1875 Constitutional Convention that produced our Constitution of 1876.

3. *Tschoepe*, supra, at 736, note 24.

4. The most recent venture was undertaken in 1976. See *Tschoepe*, supra, 14 Hous.L.R. at 743, note 95, and accompanying text.

5. "The County Attorneys shall represent the State in all cases in the District and inferior courts in their respective counties; but if any county shall be included in a district in which there shall be a District Attorney, the respective duties of District Attorneys and County Attorneys shall in such counties be regulated by the Legislature." As to those respective duties, see generally for a district attorney Articles 321 *et seq.*, especially 327, 332–341, V.A. C.S. and Article 2.01, V.A.C.C.P., and for a county attorney Articles 329 *et seq.*, especially 332–341, V.A.C.S. and Article 2.02, V.A.C.C.P.

6. "The Attorney General ... shall represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party... He shall ... give legal advice in writing to the Governor and other executive officers, when requested by them, and perform such other duties as may be required by law." As to his duties, see generally Articles 4394–4413a, V.A.C.S.

scribed in Article 199(124), V.A.C.S. and include, *inter alia*, the "duty to represent the State of Texas in all cases both criminal and civil in any and all cases *wherein it is the duty of a District or County Attorney to represent the State of Texas* that may arise in Gregg County...,"[7] *id.,* § 21. Just as in the case of the Attorney General, we believe, powers and duties of attorneys for the State are "limited to those so prescribed, and may not be enlarged on by the courts," *State v. Harney,* 164 S.W.2d 55, 56 (Tex.Civ.App.—San Antonio 1942) error refused.

Given, then, that an "appeal" is "a complaint to a superior court of injustice done by an inferior one," *Republic of Texas v. Smith,* Dallam 407 (Tex.1841) and, as our respondent and State's Attorney both concede, that a petition for writ of certiorari presented to the Supreme Court of the United States to review a decision of this Court is an appeal, the question is whether the proposed appeal to the Supreme Court by respondent offends the well settled public policy pointedly enunciated by Article V, Section 26, of the Constitution of Texas. In its rich historical context and the literal language of the prohibition, merely to pose the question is at once to answer it.

The prohibition is a self-imposed denial, succinct and direct, without qualification—it admits not exception or exemption. In another vernacular, the State of Texas commands itself: "Thou shalt not appeal." Thus, as officers and agents of the State of Texas, its Attorney General, its district attorneys, its county attorneys and all other like officials with a representative capability are similarly shorn of that power and authority that their principal, the State of Texas, has denied to itself: the right of appeal in criminal cases.

The constitutional prohibition is initially implemented at the trial court level but remains operative throughout the appellate hierarchy. The public policy considerations underlying the constitutional determination are equally compelling at every stage of the appellate process. There has not been suggested a satisfactory rationale for removing the bar blocking appeal by the State from a trial court resolution of an issue adversely to the State so as to permit an appeal by the State from an appellate court resolution of an issue against it to a superior court.[8] In all reason, a State that has deprived itself of power and authority to appeal *ab initio* suffers the same deprivation *in extenso* until it has restored them to itself.

The State Prosecuting Attorney argues that Section 26 "does not purport to say what rights the State has to appeal in federal courts nor does it prohibit State officers from appeal into federal courts." But, as if not too confident, he then asks, "If it did, why is the State appealing so many federal habeas corpus cases?" The plain and simple answer to what does not seem to be a rhetorical question is that federal habeas corpus is civil in nature, *Fay v. Noia,* 372 U.S. 391, 423–424, n. 34, 83 S.Ct. 822, 840–841, n. 34, 9 L.Ed.2d 837 (1963), so that state officers do not take any such appeal denied them in criminal cases. Even more plain and simple, however, a constitutional statement that the State shall have no right to appeal in criminal cases purports to say just that—no right of appeal "period." Its purport is to deny that right of appeal to every appellate forum, anywhere, any place, any time.

---

**7.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**8.** The plurality opinion construes "the outer limits of the prohibition of Section 26 to be a restriction on the permissible operations within the Texas judicial system" simply because Article V is entitled "Judicial Department" and "does not speak to the relation of that system or a part of that system to entities beyond, such as the federal judiciary." That analysis, if

correct, dooms the proposed venture of our respondent for as a constitutional officer within the Judicial Department, *Neal v. Sheppard,* 209 S.W.2d 388, 391 (Tex.Civ.App.—Texarkana 1948) error refused, he too is confined by Article V, Section 21, to performing such duties as therein and validly by the Legislature provided, *Neal v. Sheppard,* supra; *Hill County v. Sheppard,* 142 Tex. 358, 178 S.W.2d 261, 263 (1944). Appealing to the Supreme Court of the United States is not one of them.

Accordingly, the writ of prohibition should issue.[9]

ROBERTS and PHILLIPS, JJ., join.

## ON APPELLANT'S MOTION FOR REHEARING

DALLY, Judge, concurring.

The appellant's motion for leave to file his motion for rehearing was granted, but the motion for rehearing is now being overruled without written opinion. I concur in the overruling of the motion for rehearing, but I will take this opportunity to explain my view expressed in my short concurring opinion on original submission.

Article V, Sec. 26 of the Texas Constitution provides:

"The State shall have no right of appeal in criminal cases."

Article 44.01, V.A.C.C.P. provides:

"The State shall have no right of appeal in criminal actions."

Do these provisions prohibit the State from petitioning the Supreme Court of the United States to exercise its judicial discretion to grant review of this case by certiorari? Let us examine the nature of the procedures of appeal and of certiorari.

Appeal was unknown at common law; the right of review by appeal is derived from the constitution and statute. Tex. Const. Art. V, Sec. 5; Art. 4.03, V.A.C.C.P.; Art. 44.02, V.A.C.C.P.; see *Ex parte Martinez*, 66 Tex.Cr. 1, 145 S.W. 959 (1912); *Millican v. State*, 145 Tex.Cr. 195, 167 S.W.2d 188 (1942). Review by appeal includes a review of the facts as well as the law. Art. 44.25, V.A.C.C.P. One convicted of a criminal offense may, provided he follows the proper statutory steps, have the proceedings leading to his conviction in the lower court reviewed by a higher court as a matter of right. Art. 44.02, V.A.C.C.P. The State in this jurisdiction is prohibited from obtaining review by appeal. Art. V, Sec. 26, supra; Art. 44.01, supra. See also *State ex rel. Vance v. Routt*, 571 S.W.2d 903 (Tex.Cr.App.1978).

The writ of certiorari is derived from common law. *Schwind v. Goodman*, 221 S.W. 579 (Tex.Commn.App.1920, holding approved). Certiorari is to review errors of law not to review the facts. *Ramsey v. Morris*, 578 S.W.2d 809 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ dism'd); *State v. DeSilva*, 105 Tex. 95, 145 S.W. 330 (1912). Review by certiorari is not a right of any litigant; it is a discretionary right which a higher court has to review the proceedings of a lower court. *Ex parte Martinez*, supra; *Schwind v. Goodman*, supra. Although review by certiorari is not available to a litigant as a matter of right, either the State, limited by former jeopardy provisions of the constitution, or one convicted of a criminal offense may suggest by petition that a higher court exercise its right to review the proceedings of a lower court by certiorari. Then the higher court in its judicial discretion may decide whether justice requires it to review the proceedings. *Ramsey v. Morris*, supra; *Ex parte Martinez*, supra; *Schwind v. Goodman*, supra.

The parties, the majority, and those who dissent equate review by appeal and by certiorari; they completely ignore the history and fundamental difference of the review procedure of appeal and of certiorari. The plurality and Judge Douglas in his concurring opinion take a more difficult way to reach the correct result. The dissenters find that "appeal" as used in our constitution and statutes, includes certiorari; this erroneous conclusion accommodates and is necessary to their arguments. If those who wrote our constitution and statute had wanted to preclude the State from seeking review by the then long existing and well-known procedure of certiorari they would have plainly said the State shall not have the right to seek review by certiorari, but they did not.

*White v. State*, 543 S.W.2d 366 (Tex.Cr. App.1976) is the only case in which the

---

**9.** A writ that prohibits respondent in his official capacity of Criminal District Attorney from seeking review of our decision in this case does not, of course, preclude him or any other citizen, individually, from claiming "the right to seek certiorari ... with or without the consent of the State whose judgment is sought to be reviewed," *Ross v. Moffitt*, 417 U.S. 600, 617, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974), once he structures the proper lawsuit in an accessible court.

question now before the court has heretofore been considered by this Court. In the opinions in that case and the opinions in this case there is an attempt to find authority to show that the procedures of appeal and of certiorari are the same. Reliance is placed on the global definition of "appeal" as "a complaint to a superior court of injustice done by an inferior one" given in *Republic v. Smith*, Dallam Digest 407 (Tex. 1840). That opinion does not even use the word certiorari; that procedure was not considered. The issue before the court was whether the constitutional grant of its "appellate" jurisdiction was to be construed to include criminal as well as civil appeals. In this context the broad definition of "appeal" was given to support the court's conclusion that by this grant of "appellate" jurisdiction, the framers intended a criminal defendant to have the right to appeal his conviction in district court to the Supreme Court of this State.

The reliance on *Hart v. State*, 13 Tex. App. 555 (Galveston Term 1883) and on *Durham v. United States*, 401 U.S. 481, fn. at 483, 91 S.Ct. 858, fn. at 860 (1971) is also misplaced. *Hart* held that the remedy of writ of error was available to the defendant in a forfeited bond case. The court added in dicta that the State was prevented by Art. V, Sec. 26 from obtaining a writ of error. Certiorari was not considered; it was not even mentioned. The court in *Hart* relied upon *Cheek v. Rogers*, 1 Tex. 440 (1846), and *Luckett v. Townsend*, 3 Tex. 119 (1848). In *Cheek*, the court held damages were available against a party suing out a frivolous writ of error, as well as one bringing a frivolous appeal. In *Luckett*, the court held it could reexamine the facts brought upon writ of error just as on appeal. Neither of these cases discusses certiorari or "appeal" in the context of Art. V, Sec. 26 of the Texas Constitution.

Nor does the footnote in *Durham v. United States*, supra, suggest that the United States Supreme Court equates the procedures of appeal and certiorari for all purposes. Rather, the case only holds that death of a defendant pending direct review of a criminal conviction, whether the review is by appeal or by certiorari, abates the cause and all proceedings had in the prosecution from its inception.

Judge Onion, in his dissenting opinion, also cites these cases: *Shapleigh Hardware v. Brumfield*, 159 Miss. 175, 130 So. 98 (1930); *Gould v. Klabunde*, 326 Ill.App. 643, 63 N.E.2d 258 (1945); *Curry v. Terrell*, 1 White & W., Civ.Case, Ct.App., sec. 239.

The court in *Shapleigh Hardware v. Brumfield*, supra, stated that certiorari is an appellate proceeding for reexamination of the action of an inferior tribunal, but went on to hold that certiorari would not substitute for an ordinary appeal, and that certiorari would not lie when a Mississippi statute had restricted the court's jurisdiction to cases brought up on appeal.

*Gould v. Klabunde*, supra, is cited as holding that "an 'appeal' is a review by a superior tribunal, the method of which review may be called either 'certiorari' or 'appeal.'" However, that court was referring not to common law certiorari, but to statutory certiorari in Illinois, which provided for review of both the law and the facts by the appellate court; under that statute certiorari was the functional equivalent of appeal. This is the context in which that case was decided. The Illinois statute provided for a bond upon filing of a petition for certiorari, governed by the same rules applicable to appeal bonds. The court, in upholding such a bond, found that although the provisions of the bond departed from use of the term "certiorari" and used the term "appeal," the intent of the parties was that "appeal" meant certiorari.

*Curry v. Terrell*, supra, is cited for stating that proceedings under certiorari and appeal are analogous. However, the court was there referring to the statutory remedy of review by certiorari in county court of proceedings in justice court, which was governed by Tex.Civ.Stat. Arts. 299 through 318 (1879). These statutes provided for a trial de novo in county court on certiorari, and that "the judgment shall be rendered as in cases of an appeal from justices' courts." Art. 317, supra.

Other state appellate courts in addressing the prosecution's right to seek review by certiorari have concluded that review by

certiorari is not the same as review by an appeal in the criminal context. See generally, Annot., Right of prosecution to writ of certiorari in criminal case, 91 A.L.R.2d 1095 (1963).

The plain words of Art. V, Sec. 26 of the State Constitution and Art. 44.01, V.A.C.C.P. prevent the State from obtaining as a matter of right a review of lower court proceedings by appeal in criminal cases, but they do not prevent the State from petitioning the Supreme Court of the United States for its discretionary review of the lower court proceedings in this case.

### ON APPELLANT'S MOTION FOR REHEARING ON APPLICATION FOR WRIT OF PROHIBITION

ONION, Presiding Judge, dissenting.

Appellant-relator's motion for rehearing following this court's refusal to grant relief on his application for a writ of prohibition is overruled without written opinion. I dissent for the reason that the question presented by the original application for writ of prohibition is now moot. The application should be denied, the opinions written on the now mooted issue should be withdrawn and the mandate in Cause No. 60,554 should issue.

Appellant Faulder was convicted of capital murder and assessed the death penalty. On appeal this court reversed the conviction. District Attorney Hill then filed a motion to stay this court's mandate of reversal in order that he might seek a writ of certiorari under 28 U.S.C., § 1257(3), from the United States Supreme Court for review of this court's action. Faulder filed an application for writ of prohibition to prevent Hill from seeking such review contending such action was an appeal by the State, prohibited by constitutional and statutory provisions. After concluding that this court had jurisdiction to issue a writ of prohibition if the district attorney was acting beyond his authority, the majority of the court in a 5–4 decision held that the constitutional prohibition against the right of appeal by the State in criminal cases did not prevent the district attorney from seeking

review by the United States Supreme Court. There was a plurality opinion, a concurring opinion and three dissenting opinions. Relief requested was denied. The appellant-relator Faulder filed a motion for leave to file a motion for rehearing, and while said motion was pending before this court, the respondent Hill filed his petition for writ of certiorari in the United States Supreme Court. Thereafter, this court granted appellant-relator's motion for leave to file a motion for rehearing. While said motion for a rehearing was under consideration by this court, the petition for certiorari was denied by the United States Supreme Court. The issue presented by the application for writ of prohibition is now clearly moot. Courts do not and should not act upon moot issues.

The proper disposition of the matter should not depend upon the view of the majority as to whether original application for a writ of prohibition had merit or not.

Believing that the application for writ of prohibition should be denied as the question is moot and prohibition is no longer applicable, I dissent to the action of the majority.[1]

ROBERTS, CLINTON and TEAGUE, JJ., join in this opinion.

---

1. Even if the plurality opinion of a previously constituted court is now published, its prece-dential value must be surely questioned under the circumstances of this case.